IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
-------------------------------------------x
                                           :
In re:                                     :        Master File No.
                                           :        98-1664 (WHW)
CENDANT CORPORATION                        :
LITIGATION                                 :        This document relates to:
                                           :        All Actions Except the Prides Action (No. 98-2819)
-------------------------------------------x
```

MAR 2 2000
@ 4:15 pm

## **HEARING ORDER**

WHEREAS:

A.      Lead Plaintiffs, the California Public Employees' Retirement System, the New York State Common Retirement Fund and the New York City Pension Funds (collectively, "Lead Plaintiffs") and defendant Cendant Corporation ("Cendant") and Henry R. Silverman, John D. Snodgrass, Michael P. Monaco, James E. Buckman, Scott E. Forbes, Steven P. Holmes, Robert D. Kunisch, Leonard S. Coleman, Christel DeHaan, Martin L. Edelman, Brian Mulroney, Robert E. Nederlander, Robert W. Pittman, E. John Rosenwald, Jr., Leonard Schutzman and Robert F. Smith (the "HFS Individual Defendants") have entered into a settlement of the claims asserted in the class actions consolidated in the above-captioned action (the "Action"), the terms of which are set forth in a Stipulation of Settlement with Cendant and the HFS Individual Defendants, dated as of March 17, 2000 (the "Cendant Settlement");

B.      Lead Plaintiffs and defendant Ernst & Young LLP ("E&Y") have entered into a separate settlement of the claims asserted in the Action, the terms of which are set forth in a Stipulation of Settlement with E&Y, dated as of March 17, 2000 (the "E&Y Settlement");

ENTERED

3-30-2000
By A Rossi

C.      Lead Plaintiffs, Cendant and the HFS Individual Defendants have moved, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order preliminarily approving the Cendant Settlement, and Lead Plaintiffs and E&Y have moved, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order preliminarily approving the E&Y Settlement, in accordance with the Cendant Stipulation and the E&Y Stipulation, respectively, and providing notice to Class Members; and

D.      The Court having read and considered the Cendant Stipulation, the E&Y Stipulation, the proposed Notice of Settlement of Class Action, the proposed Summary Notice of Settlement of Class Action, the proposed Plan of Allocation of Net Settlement Fund, the proposed form of the Proof of Claim and Release, and the proposed forms of Judgments and Orders relating to the Settlements, and finding that substantial and sufficient grounds exist for entering this Order;

IT IS HEREBY ORDERED:

1.      For purposes of this Order, the Court adopts all defined terms as set forth in the respective Stipulations of Settlement.  Any inconsistencies between the Stipulations and Notice of Settlement of Class Action will be controlled by the language of the Stipulations.

2.      The Court preliminarily approves the Cendant Settlement and the E&Y Settlement, as reflected in the respective Stipulations of Settlement, each as being fair, just, reasonable and adequate, pending a final hearing on the Cendant Settlement and the E&Y Settlement.

3.      Prosecution by any Class Member of any action or claim that is subject to the release and dismissal contemplated by the Cendant Settlement or the E&Y Settlement is hereby enjoined.

2

NOTICE

       4.      Lead Plaintiffs shall cause notice of the proposed Cendant Settlement and the proposed E&Y Settlement, the hearing on the proposed Cendant Settlement and the proposed E&Y Settlement, the request for approval of the Plan of Allocation of Net Settlement Fund, and Lead Counsel's application by counsel for an award of attorneys' fees and payment of expenses to be provided to Class Members as follows:

       a.      Within 10 days of the date of this Order, a copy of the Notice of Settlement of Class Action (the "Settlement Notice"), together with a copy of the Proof of Claim and Release form (the "Proof of Claim"), substantially in the form annexed hereto as Exhibits 1 and 2, respectively, shall be mailed by first class mail, postage prepaid, to all Class Members at the address of each such person as set forth in the records of Cendant or its transfer agent; or as identified through the earlier process of mailing the Notice of Pendency of Class Action, per the Court's Order of August 6, 1999; or who otherwise may be identified through further reasonable effort; and

       b.      A Summary Notice of Settlement of Class Action (the "Summary Notice") substantially in the form annexed hereto as Exhibit 3 shall be published once each on separate days in the national editions each of *The Wall Street Journal* and *The New York Times* and published electronically on the *PR Newswire* within two weeks after the mailing of the Settlement Notice.

       5.      The Court approves the form of Settlement Notice, Summary Notice (together, the "Notices") and Proof of Claim and finds that the procedures established for publication, mailing and distribution of such Notices substantially in the manner and form set forth in paragraph 3 of this Order meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and constitute the best notice practicable under the circumstances. Further, because the proposed

3

Cendant Settlement and the proposed E&Y Settlement, if approved, will completely terminate the Action as to Lead Plaintiffs and Class Members, the Court finds that, in contrast to a partial settlement, there is no compelling reason that would require continued confidentiality of the fee proposal that the Court determined to be the "lowest qualified bid," and that disclosure in the Settlement Notice of such fee grid pursuant to which Lead Counsel are prosecuting this Action will have no prejudicial effect as to Class Members. Accordingly, the Court authorizes Lead Plaintiffs to include in the Settlement Notice the fee grid of the "lowest qualified bid."

6.      To effectuate the provision of notice provided for in paragraph 4 hereof, Lead Counsel or their agents shall lease and maintain a post office box of adequate size for the return of Proofs of Claim. All Notices to Class Members shall designate said post office box as the return address for the purposes designated in the Notices. Lead Counsel or their agents shall be responsible for the receipt of all responses from Class Members and, until further order of the Court, shall preserve all entries of appearance, Proofs of Claim, and all other written communications from Class Members, nominees or any other person in response to the Notices. The costs of notification to Class Members of the Cendant Settlement and the E&Y Settlement, including printing, mailing and publication of all required notices, shall be paid out of the Settlement Fund. In accordance with the Cendant Settlement Stipulation, Lead Counsel may draw up to $2 million from the Cendant Settlement Fund to pay the costs of notice and settlement administration.

7.      Seven days before the date fixed by this Court for the Settlement Hearing, Lead Counsel shall cause to be filed with the Clerk of this Court affidavits or declarations of the person or persons under whose general direction the mailing of the Settlement Notice and the publication

4

of the Summary Notice shall have been made, showing that such mailing and publication have been made in accordance with this Order.

8.       All nominees who hold or held CUC International, Inc. ("CUC") or Cendant publicly traded securities (except PRIDES) for beneficial owners who are Class Members are directed to forward the Notice and Proof of Claim to such beneficial owners or, in the alternative, to supply the names and addresses of such beneficial owners to the Claims Administrator as set forth in the Notice.

9.       Lead Counsel may retain a Claims Administrator and may pay the reasonable and customary fees and costs associated with the review of claims and administration of the Settlement out of the Settlement Fund without further order of the Court.

10.      Lead Counsel are authorized and directed to prepare any tax returns required to be filed on behalf of the Settlement Fund and to cause any taxes due and owing to be paid from the Settlement Fund.

**HEARING; RIGHT TO BE HEARD**

11.      There shall be a hearing on _June 28_, 2000 at _10: a_.m. (the "Settlement Hearing") at which time the Court shall address the fairness and adequacy of the Cendant Settlement and the E&Y Settlement, the fairness and reasonableness of the Plan of Allocation of Net Settlement Fund, and Lead Counsel's application for attorneys' fees and payment of expenses.  The Settlement Hearing shall be held at the United States District Court for the District of New Jersey, Martin Luther King Jr. Federal Courthouse, Courtroom 4D, 50 Walnut Street, Newark, New Jersey 07101.

12.      Papers in support of the Cendant Settlement, the E&Y Settlement, the Plan of Allocation of Net Settlement Fund and Lead Counsel's application for attorneys' fees and payment of expenses, shall be submitted by _May 5_, 2000.

5

13.    Any Class Member may appear at the Settlement Hearing to show cause why the proposed Cendant Settlement and/or the proposed E&Y Settlement should or should not be approved as fair, reasonable and adequate; why judgments should or should not be entered thereon; why the Plan of Allocation of Net Settlement Fund should or should not be approved as fair reasonable and adequate; or why Lead Counsel should or should not be awarded attorneys' fees and payment of expenses in the amounts sought by Lead Counsel; *provided, however*, that no Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Cendant Settlement, the proposed E&Y Settlement, the Judgments and Orders to be entered approving the same, the proposed Plan of Allocation of Net Settlement Fund or Lead Counsel's application for an award of attorneys' fees and payment of expenses, unless on or before *May 31*, 2000 such Class Member has properly and timely served by hand or by first-class mail for receipt by such date by the counsel listed below written objections and copies of any supporting papers and briefs (which must contain proof of all purchases, acquisitions, sales and dispositions of CUC or Cendant publicly traded securities (including call options on Cendant common stock), except PRIDES investment units, made by such Class Member during the Class Period) upon Lead Counsel:

| | |
|---|---|
| Leonard Barrack, Esq. | Max W. Berger, Esq. |
| Gerald J. Rodeos, Esq. | Daniel L. Berger, Esq. |
| Jeffrey W. Golan, Esq. | Jeffrey N. Leibell, Esq. |
| Leslie B. Molder, Esq. | Bernstein Litowitz Berger & |
| Barrack, Rodos & Bacine | Grossmann LLP |
| 3300 Two Commerce Square | 1285 Avenue of the Americas |
| 2001 Market Street | New York, NY  10019 |
| Philadelphia, PA  19103 | |

and on Counsel for Cendant, for the HFS Individual Defendants and for E&Y:

| Counsel for Cendant: | Counsel for the HFS Individual Defendants: | Counsel for E&Y: |
|---|---|---|
| Jonathan J.. Lerner, Esq. | James G. Kreissman, Esq. | Alan N. Salpeter, Esq. |
| Samuel Kadet, Esq. | Jacob S. Pultman, Esq. | Caryn Jacobs, Esq. |
| Joseph N. Sacca, Esq. | Simpson Thatcher & Bartlett | Mayer, Brown & Platt |
| Skadden, Arps, Slate, | 425 Lexington Avenue | 190 South LaSalle Street |
| Meagher & Flom LLP | New York, NY 10017 | Chicago, IL 60603-3441 |
| Four Times Square | | |
| New York, NY 10036 | | |

and has filed by _May 31_ , 2000 said objections, papers and briefs, showing due proof of such

service upon all counsel identified above, with the Clerk of the United States District Court for the

District of New Jersey, Martin Luther King Jr. Federal Courthouse, 50 Walnut Street, Newark, New

Jersey 07101.

14.     Any Class Member who does not object in the manner prescribed above shall be

deemed to have waived such objection and shall forever be foreclosed from making any objection

to the fairness, adequacy or reasonableness of the proposed Cendant Settlement, the proposed E&Y

Settlement, the Judgments and Orders to be entered approving the Cendant Settlement and the E&Y

Settlement, respectively, the Plan of Allocation of Net Settlement Fund, or Lead Counsel's

application for an award of attorneys' fees and payment of expenses.

15.     In the event any Class Member timely and properly serves and files written

objections, as set forth above, Lead Counsel, counsel for Cendant, counsel for the HFS Individual

Defendants, and counsel for E&Y may, as they deem appropriate, submit reply papers in support of

the Cendant Settlement, the E&Y Settlement, the Plan of Allocation of Net Settlement Fund, and

Lead Counsel's application for attorneys' fees and payment of expenses by _June 19_ , 2000.

16.    If approved, all Class Members will be bound by the proposed Cendant Settlement and the proposed E&Y Settlement provided for in the Cendant Stipulation and the E&Y Stipulation, respectively, and by any judgment or determination of the Court affecting Class Members, regardless of whether or not a Class Member submits a Proof of Claim.

17.    The Court expressly reserves the right to adjourn or continue the Settlement Hearing or any adjournment or continuance thereof without any further notice other than an announcement at the Settlement Hearing or any adjournment or continuance thereof, and to approve the Stipulations of Settlement with modification and without further notice to Class Members.  The Court retains jurisdiction of this Action to consider all further applications arising out of or connected with the proposed Cendant Settlement and the proposed E&Y Settlement herein, and as otherwise warranted.

**CLAIMS PROCESS**

18.    In order to be entitled to participate in the Cendant Settlement and the E&Y Settlement, a Class Member, as defined in the respective Stipulations of Settlement, must timely submit a valid Proof of Claim, substantially in the form annexed as Exhibit 2 hereto, to:

> In re Cendant Corporation Litigation
> Claims Administration
> c/o Heffler, Radetich & Saitta L.L.P.
> P.O. Box 510
> Philadelphia, Pennsylvania 19105-0510

To be valid and accepted, a Proof of Claim must be postmarked on or before _August 18_, 2000. Any Class Member who does not timely submit a valid Proof of Claim shall not be entitled to share in the Settlement Fund, except as specifically ordered by the Court, but nonetheless shall be barred and enjoined from asserting any of the Released Claims.

8

19.     Once the Claims Administrator has considered a timely submitted Proof of Claim, Lead Counsel, through the Claims Administrator, shall determine, based upon the Plan of Allocation of Net Settlement Fund, whether such claim is valid, deficient or rejected.  For each claim determined to be either deficient or rejected, the Claims Administrator shall send a deficiency letter or a rejection letter, as appropriate, describing the bases on which the claim was so determined.

20.     Each Class Member who receives a deficiency letter or rejection letter shall have 20 days from the date of such letter to supply to the Claims Administrator documentation and/or an explanation sufficient to remedy the deficiency or rejection.  Any Class Member who receives a deficiency letter or a rejection letter and who fails to submit documentation sufficient to remedy the deficiency or reason for rejection within the time prescribed herein shall have such claim deemed finally rejected.  Such finally rejected claims shall be submitted to the Court as rejected claims at such time as Lead Plaintiffs move the Court for an Order approving distribution of the Net Settlement Fund, unless the recipient objects in writing to the deficiency letter or rejection letter, in which case the claim shall be submitted to the Court as a disputed claim.  Notice of any hearing on such motion shall be provided to all Class Members whose claims are disputed.

21.     If a Class Member timely responds to a deficiency letter or rejection letter by providing an explanation and/or documentation in response to such a deficiency letter or rejection letter, Lead Counsel, through the Claims Administrator, shall determine whether such explanation and/or documentation is sufficient to remedy the deficiency or reason for rejection.  If Lead Counsel, through the Claims Administrator, determines that the explanation and/or documentation submitted in response to the deficiency letter or the rejection letter is sufficient, such claim shall be deemed a valid claim.  If, on the other hand, Lead Counsel, through the Claims Administrator, determines that

9

the explanation and/or documentation is not sufficient to remedy the deficiency or reason for rejection, such claim shall be deemed finally rejected. Such finally rejected claims shall be submitted to the Court as disputed claims at such time as Lead Plaintiffs move the Court for an Order approving distribution of the Net Settlement Fund. Notice of any hearing on such motion shall be provided to all Class Members whose claims are disputed. There shall be no distribution of any of the Settlement Amounts to any Class Member until a plan of allocation is finally approved and is affirmed on appeal or certiorari and is no longer subject to review by appeal or certiorari and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

     22.    The Court shall retain continuing jurisdiction over the Cendant Settlement and the E&Y Settlement, as well as the administration thereof.

IT IS SO ORDERED:

DATED: _March 29_, 2000

_____
WILLIAM H. WALLS
UNITED STATES DISTRICT JUDGE

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

----------------------------------------------x
                      :

In re:                  :      Master File No.
                      :      98-1664 (WHW)

CENDANT CORPORATION  :
LITIGATION          :      This document relates to:
                      :      All Actions Except the Prides Action (No. 98-2819)
----------------------------------------------x

## NOTICE OF SETTLEMENT OF CLASS ACTION

**TO:**      **ALL PERSONS AND ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED PUBLICLY TRADED SECURITIES (OTHER THAN PRIDES) OF EITHER (i) CENDANT CORPORATION OR (ii) CUC INTERNATIONAL, INC., OR WHO PURCHASED OR ACQUIRED CALL OPTIONS ON CENDANT COMMON STOCK, DURING THE PERIOD BEGINNING MAY 31, 1995, THROUGH AND INCLUDING AUGUST 28, 1998, AND WHO WERE INJURED THEREBY (THE "CLASS")**

## SUMMARY OF SETTLEMENTS

STATEMENT OF PLAINTIFF RECOVERY: Lead Plaintiffs, the California Public Employees' Retirement System ("CalPERS"), the New York State Common Retirement Fund (the "NYSCRF") and the New York City Pension Funds (the "NYCPF") (collectively, "Lead Plaintiffs"), represented by Lead Counsel, Bernstein Litowitz Berger and Grossmann LLP and Barrack, Rodos & Bacine, have entered into two separate proposed settlements that together will resolve all claims of the plaintiffs and Class Members against all defendants ("Defendants") in the action filed by Lead Plaintiffs on behalf of the Class (except for actions brought on behalf of purchasers of PRIDES) under Master File No. 98-1664 (WHW) (the "Action"). One proposed settlement is with Cendant Corporation ("Cendant") and Henry R. Silverman, John D. Snodgrass, Michael P. Monaco, James E. Buckman, Scott E. Forbes, Steven P. Holmes, Robert D. Kunisch, Leonard S. Coleman, Christel

DeHaan, Martin L. Edelman, Brian Mulroney, Robert E. Nederlander, Robert W. Pittman, E. John Rosenwald, Jr., Leonard Schutzman and Robert F. Smith (the "HFS Individual Defendants"); the other is with Ernst & Young LLP ("E&Y"). These two proposed settlements (collectively, the "Settlements") are separate and independent. The Settlements will create a settlement fund (the "Settlement Fund") that totals $3,186,500,000 in cash plus interest. The settlement with Cendant and the HFS Individual Defendants (the "Cendant Settlement") includes a payment for the Class of $2,851,500,000 in cash, and the settlement with E&Y (the "E&Y Settlement") includes a payment for the Class of $335,000,000 in cash. As part of the Cendant Settlement, the Class also will receive one-half of any net recovery that Cendant or the HFS Individual Defendants may obtain from E&Y as a result of their continuing litigation against E&Y. Also, as part of the Cendant Settlement, Cendant has agreed to corporate governance changes that Lead Plaintiffs believe are significant, including adoption of a specific definition for who may qualify as an "independent director"; requiring its Board of Directors to have a majority of independent directors; requiring the Audit, Compensation and Nominating Committees to consist entirely of independent directors (at least one member of the Audit Committee must have accounting or financial management expertise); precluding the re-pricing of employee stock options under most conditions (except in connection with certain corporate transactions) without a vote of shareholders; and not objecting to a declassification of its Board of Directors. As to the cash settlement payments, the average recovery per share will depend on when Class Members purchased and sold Cendant or CUC International, Inc. ("CUC") common stock, notes or options, the number of shares, notes or options affected, and the amount of inflation per share, note or option as more fully described below in paragraph 19 of this Notice. According to Lead Plaintiffs, each share of Cendant and CUC common stock purchased

or acquired during the Class Period was affected, to varying degrees, by the alleged fraud. The experts on damages retained by Lead Plaintiffs calculate that, in all, approximately 967 million shares of Cendant common stock were traded during the Class Period. Assuming that all affected shares elected to participate in the Settlements, the average recovery per share would be $2.95 from the Cendant Settlement and $0.35 from the E&Y Settlement, for a total of $3.30 per share from the two Settlements, but with some Class Members recovering more and some less, depending on when their shares were acquired, as more fully described in the accompanying Plan of Allocation of Net Settlement Fund (the "Plan of Allocation").

**STATEMENT OF POTENTIAL OUTCOME:** As described in the Plan of Allocation, Lead Plaintiffs and Lead Counsel estimate that, if Class Members prevailed on all of their claims against all Defendants, the reasonable damages would be approximately $8.5 billion. This amount could increase or decrease significantly using different assumptions and methodologies. The reasonable average amount of damages recoverable for Class Members' claims would be $8.79 per share, without regard to actual liability or other discounts. However, it is unlikely that Class Members could have recovered the maximum amount even if they prevailed at trial on all of their claims in light of Defendants' (i) challenges to Lead Plaintiffs' damages calculation; (ii) defenses to the amount of damages; and (iii) ability to pay any damages that may have been found to be attributable to them. Cendant, the HFS Individual Defendants and E&Y deny all liability and dispute the maximum amount of damages recoverable if Class Members prevailed on each of their claims and in all respects.

**STATEMENT OF ATTORNEYS' FEES AND COSTS SOUGHT:** Lead Counsel will make one application to the Court for an award of attorneys' fees. That application shall be for 8.275% of the combined

- 3 -

Cendant and E&Y Settlement Fund, after payment of Court-approved expenses, or approximately

$0.27 per share from both the Cendant Settlement and the E&Y Settlement. The amount applied for

adheres to the fee grid approved by the Court (in advance of choosing Lead Counsel) as the lowest

qualified bid established through the auction process undertaken by the Court and described below.

The fee sought is well below the 25-33% that is customarily sought in similar contingency fee

litigation. Lead Counsel also will apply for payment of out-of-pocket costs and expenses incurred

in prosecuting the Class's claims, including fees of Lead Plaintiffs' financial consultants, damages

experts and accounting experts, in a total amount not to exceed $15,855,000, or $0.02 per share.

**IDENTIFICATION OF ATTORNEYS' REPRESENTATIVES:** Lead Counsel identified below are available

to answer questions from Class Members concerning any matter contained in this Notice:

| | |
|---|---|
| Leonard Barrack, Esq. | Max W. Berger, Esq. |
| Gerald J. Rodos, Esq. | Daniel L. Berger, Esq. |
| Jeffrey W. Golan, Esq. | Jeffrey N. Leibell, Esq. |
| Leslie B. Molder, Esq. | Bernstein Litowitz Berger & |
| Barrack, Rodos & Bacine | Grossmann LLP |
| 3300 Two Commerce Square | 1285 Avenue of the Americas |
| 2001 Market Street | New York, NY  10019 |
| Philadelphia, PA  19103 | (212) 554-1400 |
| (215) 963-0600 | |

**REASONS FOR THE SETTLEMENT:** A full statement of the reasons for the Settlements is set forth

below in paragraphs 26-28 of this Notice. In summary, Lead Plaintiffs believe that the Settlements

are fair, reasonable and in the best interests of the Class considering the amounts of the settlements,

the large percentage of damages recovered, and the immediacy of recovery to the Class. Lead

Plaintiffs further recognize and acknowledge the expense and length of continued proceedings

necessary to prosecute the Action through trial and appeals. Lead Plaintiffs also have considered the

uncertain outcome and the risk of any further litigation, especially in complex actions such as the

Action, as well as the difficulties and delays inherent in any such litigation. Lead Plaintiffs are mindful of the inherent problems of proof and possible defenses to the federal securities law violations asserted.

> **PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. THIS NOTICE RELATES TO A PROPOSED SETTLEMENT OF THIS CLASS ACTION AND, IF YOU ARE A CLASS MEMBER, CONTAINS IMPORTANT INFORMATION AS TO YOUR RIGHTS CONCERNING THE SETTLEMENT**

PURPOSE OF THIS NOTICE; HEARING.

1.      You already should have received or seen a "Notice of Pendency of Class Action," dated October 8, 1999 (the "Notice of Pendency"). Reference should be made to this Notice of Pendency for a fuller description of the Class, the Parties and the nature of the Action. If you did not receive or view a Notice of Pendency, or would like another copy, please call the toll free number listed below in paragraph 45.

2.      In summary,

        a.      The Class certified by the Court by Order dated January 27, 1999 is: All purchasers and acquirers of Cendant Corporation or CUC International, Inc. publicly-traded securities (including call options on Cendant common stock), except PRIDES, between May 31, 1995 and August 28, 1998 (the "Class Period"), who were injured thereby. Excluded from the Class are: (i) Defendants; (ii) members of the family of each individual Defendant; (iii) any entity in which any Defendant has a controlling interest; (iv) officers and directors of Cendant and its subsidiaries and affiliates; and (iv) the legal representatives, heirs, successors or assigns of any such excluded party. Pursuant to the Notice of Pendency, members of the Class had the right to opt out of the Class only by written request postmarked

- 5 -

on or before December 27, 1999. As used in this Notice, "Class Members" means those members of the Class who did not timely submit a proper request for exclusion, as provided in the Notice dated October 8, 1999, postmarked on or before December 27, 1999.

      b.    The Amended Consolidated Class Action Complaint on Behalf of Purchasers and Acquirers of All Cendant and CUC Publicly Traded Securities except PRIDES (the "Complaint"), asserts claims against Cendant; its officers and directors; the officers and directors of CUC; and E&Y for alleged violations, during the Class Period, of the federal securities laws arising out of alleged fraud at Cendant first publicly disclosed on April 15, 1998.

      3.    The purpose of this Notice, which is given pursuant to Rule 23 of the Federal Rules of Civil Procedure and pursuant to an Order of the United States District Court for the District of New Jersey, is to inform you of the Settlements with Cendant and the HFS Individual Defendants for $2,851,500,000 plus other consideration, and with E&Y for $335,000,000, for a total of $3,186,500,000 in cash, plus interest. If approved, the Settlements will resolve all of the claims of Class Members in the Action completely and with prejudice. If the Cendant Settlement is approved, all of the claims Class Members filed or could have filed (as more fully described in paragraph 23 below) will be released against Cendant, the Individual Defendants, and Cendant's parent entities, affiliates, subsidiaries, predecessors (including CUC), successors or assigns, and each of its past, present or future officers, directors, associates, stockholders, controlling persons, representatives, employees, attorneys, accountants (other than E&Y), underwriters, financial or investment advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, personal representatives, estates or administrators. If the E&Y Settlement is approved, all of the claims Class

- 6 -

Members filed or could have filed (as more fully described in paragraph 24 below) against E&Y and its past, present, and future parent entities, affiliates, subsidiaries, predecessors, and successors (including, without limitation, Cap Gemini S.A. if and when the Transaction closes), and each of their agents, employees, assigns, insurers, partners, heirs, executors, trustees, and administrators, as well as the personal representatives, estates, administrators, families, and spouses of each of their partners, employees, and agents will be released.

4.      A hearing (the "Settlement Hearing") will be held on _____, 2000, at _____.m. before the Hon. William H. Walls in the United States District Court for the District of New Jersey, Martin Luther King, Jr. Courthouse, Courtroom 4D, Newark, New Jersey 07101 (the "Court"). At the Hearing, the Court will consider (i) the fairness, reasonableness and adequacy of each of the proposed settlements; (ii) the fairness and reasonableness of the proposed Plan of Allocation of Net Settlement Funds; and (iii) the application by Lead Counsel for an award of attorneys fees and reimbursement of expenses.

**BACKGROUND OF THE SETTLEMENTS**

5.      By Order filed September 8, 1998, the Court appointed CalPERS, NYSCRF and NYCPF as Lead Plaintiffs. As described in detail in the Notice of Pendency, Lead Plaintiffs vigorously prosecuted this Action on behalf of the Class. After filing the Complaint, Lead Plaintiffs successfully moved to have the Class certified, successfully defeated all or part of various motions to dismiss the Complaint, and defeated various motions to stay proceedings, including discovery in the Action.

6.      Since early 1999, Lead Plaintiffs, through Lead Counsel, have conducted extensive pretrial discovery, and thoroughly analyzed the facts and claims involved in the Action. Specifically:

- 7 -

a.      Prior to formal discovery under the Federal Rules of Civil Procedure, Cendant produced to Lead Plaintiffs (as part of an agreement for Lead Plaintiffs to defer their motion for partial summary judgment) over three hundred thousand pages of documents. These documents were the documents reviewed by the advisors to the Audit Committee of Cendant's Board, and related to the three-year scheme by Cendant, CUC, and their subsidiaries to fraudulently overstate revenue, net income and financial position in financial statements and press releases. Over several months of thorough review by teams of attorneys, these documents were logged, separated according to their relevance to the various components of the accounting fraud, and analyzed.

b.      Once formal discovery began, Lead Plaintiffs, through Lead Counsel, served document requests and interrogatories on all named Defendants, and served subpoenas for production of documents on relevant non-parties.

c.      Cendant produced relevant documents to Lead Plaintiffs, who, through counsel, reviewed all such documents for their impact on the Action.

d.      E&Y produced relevant documents to Lead Plaintiffs, who, through counsel, reviewed all such documents for their impact on the Action.

e.      Many of the Individual Defendants produced relevant documents to Lead Plaintiffs, who, through counsel, reviewed all such documents for their impact on the Action.

f.      Willkie Farr & Gallagher, counsel to Cendant's Audit Committee in connection with the Audit Committee's investigation into the fraudulent scheme at CUC and Cendant, produced documents that were similarly reviewed and categorized according to relevancy.

- 8 -

g.      Bear Stearns & Co., advisor to HFS in connection with HFS's merger with CUC, produced documents that were similarly reviewed and categorized according to relevancy.

7.      Lead Plaintiffs retained the accounting firm of Marks Paneth & Shron LLP ("MP&S"), expert forensic accountants, to assist in reviewing the vast accounting records relevant to the issues in this Action, understanding the complicated accounting issues implicated by the alleged accounting scheme and investigating the case of alleged auditing failures by E&Y. Along with Lead Counsel, MP&S carefully reviewed the Audit Committee Report and exhibits thereto, hundreds of thousands of pages of accounting documents produced by Cendant, and the E&Y working paper files for the audits and reviews conducted by E&Y. MP&S regularly discussed its progress and analysis with Lead Counsel.

8.      Beginning in June of 1999, Lead Plaintiffs, through Lead Counsel, began settlement discussions with Cendant and the HFS Individual Defendants. To assist with those settlement discussions, Lead Plaintiffs retained an investment banker, Lazard Frères & Co. LLC ("Lazard"), and Arthur S. Ainsberg, as financial consultants, as well as Forensic Economics, Inc., an expert on economic analysis of damages in securities actions, which provided the following services:

9.      Lazard was retained to analyze the business and financial condition of Cendant, formulate appropriate strategies and structural alternatives in conjunction with settlement negotiations, and advise Lead Plaintiffs and Lead Counsel about the likely effects of potential settlement amounts, either in cash or in Cendant securities, on Cendant's present and future business and financial condition. Lazard obtained highly confidential business information from Cendant as if Lazard were performing due diligence in connection with a business combination. That

- 9 -

information included historical financial information (by business segment and line of business), and projected financial data (on both a consolidated and business segment basis) and all significant assumptions used therein, including operating budgets, long-term strategic and financial plans, capital expenditure budgets, debt maturity schedules, and schedules of the pro forma impact of proposed acquisitions and divestitures. Lazard met with senior Cendant financial personnel, including the Company's Chief Financial Officer, and with senior representatives of Merrill Lynch, Cendant's financial consultants, to discuss and review the materials provided by Cendant. Lazard thoroughly analyzed this information, together with significant information collected from other sources, to prepare a detailed five-year model of Cendant's financial condition and operations, including revenues, income and cash flows. Lazard then developed extensive projections assuming a range of potential settlement amounts and assuming different compositions of those potential settlements, including settlements that would be all cash and others that would be part cash and part Cendant common stock. Lead Counsel participated in Lazard's collection of information and development of its models and projections, and Lead Plaintiffs and Lead Counsel were thoroughly briefed by Lazard upon Lazard's completion of its tasks. Lazard presented its findings and analyses to Cendant's counsel and Cendant's senior executives. Lazard's analyses assisted significantly in settlement negotiations with Cendant and the HFS Individual Defendants, and were significant factors in Lead Plaintiffs' decision to agree to the Cendant Settlement described in this Notice.

10.    Arthur Ainsberg, a highly regarded investment banking expert, assisted Lead Plaintiffs and Lead Counsel in the identification, investigation and selection of investment banking firms, and provided additional liaison guidance and assistance throughout the settlement process.

'11.     Forensic Economics was retained to determine the Class's damages.  They performed extensive research concerning Cendant, CUC and HFS (the two companies that merged, effective December 17, 1997, to form Cendant), including all public statements made by or about Cendant and CUC during the Class Period, as well as the market's reaction to such statements, and to public revelations about the Company's fraudulent scheme.  Based on this information, and on models of securities trading, Forensic Economics performed complex damage analyses.  These analyses also assisted in settlement negotiations with Cendant and the HFS Individual Defendants, and were significant factors in Lead Plaintiffs' decision to agree to the Settlements described in this Notice. The total amount of damage described in this Notice (cumulatively and on a per share basis), and the Loss Amounts per share described in the attached Plan of Allocation were calculated by Forensic Economics.

12.     Settlement discussions were arduous and protracted.  Over the course of the six months from June through December 1999, Lead Counsel and counsel for Cendant and the HFS Individual Defendants held many negotiating sessions, both in person and via telephone conference. At the same time, Lead Counsel vigorously pursued the Class's claims, both in Court and through the discovery process described above.  Cendant and the HFS Individual Defendants strongly disputed the analysis and conclusions of Lead Plaintiffs' financial consultant and damages expert, particularly the amount of recoverable damages.  Cendant supplied Lead Counsel with the analyses prepared by Cendant's own financial consultants and damages experts; Lead Plaintiffs and Lead Counsel, together with their experts, considered, analyzed and attempted to refute the conclusions of Cendant's experts.

- 11 -

'13.    Later during the summer of 1999, while settlement discussions were ongoing with Cendant and the HFS Individual Defendants, Lead Plaintiffs, again through Lead Counsel, began settlement discussions with E&Y.  These discussions, too, were arduous and contentious. Nevertheless, by the late fall of 1999, Lead Plaintiffs were ready to reach separate tentative settlement agreements with (i) Cendant and the HFS Individual Defendants, and (ii) E&Y.  Lead Plaintiffs, Cendant, the HFS Individual Defendants and E&Y presented the relevant terms of the Settlements to the Court, after which they were publicly announced on December 7, 1999 and December 17, 1999.

**DESCRIPTION OF THE SETTLEMENTS.**

**Cendant Settlement.**

14.    The Cendant Settlement, which provides for a full settlement of the Action against Cendant and all the Individual Defendants, has three primary elements:

a.    Cendant will pay $2,851,500,000 in cash into the Settlement Fund (the "Cendant Settlement Amount");

b.    Cendant and the HFS Individual Defendants will pay to the Class an amount equal to 50% of any net recovery that they obtain from E&Y as a result of litigation they are prosecuting against E&Y; and

c.    Certain corporate governance changes.

15.    Within 90 days following District Court approval of the Cendant Settlement, Cendant must obtain, in favor of the Lead Plaintiffs and Class Members, at Cendant's expense, from financial institutions acceptable to Lead Plaintiffs and in a form acceptable to Lead Plaintiffs, an irrevocable Letter of Credit, a Surety Bond (of creditworthiness equivalent to a Letter of Credit) or a

combination thereof (the "Security") in the full amount of the Cendant Settlement Amount which shall be maintained by Cendant until such time as it makes payments as specified in the Stipulation of Settlement.

16.     The $2,851,500,000 will earn interest at a rate equal to the rate earned by 30-day U.S. Treasury Bills, for the benefit of Class Members, beginning on August 20, 2000 or five days after the District Court approves the Cendant Settlement, whichever is later.

17.     The entire Cendant Settlement Amount (after deduction of Court-approved costs, expenses and attorneys' fees), plus interest, will be distributed to Class Members who timely submit valid Proofs of Claim (as described below in paragraph 33). There will not be any reversion to Cendant of any portion of the Cendant Settlement Amount.

18.     Such Class Members will further receive an amount equal to one-half of any net recovery that Cendant or the HFS Individual Defendants obtain from E&Y as a result of litigation they are prosecuting or may prosecute in the future against E&Y. Litigation between Cendant and E&Y is currently pending, and Lead Counsel, Lead Plaintiffs, and Class Members have no control or decisionmaking authority over this litigation.

19.     Also as part of the settlement, Cendant has agreed to institute certain corporate governance changes, which Lead Plaintiffs believe are far-reaching and unprecedented in securities class action litigation. These changes include:

> Within 30 days following the effective date of the Cendant Settle-
> ment, the Board's Audit Committee, Nominating Committee and
> Compensation Committee each will be comprised entirely of
> independent directors (according to a specific definition, endorsed by
> the institutional investment community, of what constitutes an
> independent director);

- 13 -

The majority of the Board will be independent within two years following final approval of the Settlement;

Cendant will present to its shareholders for approval at the next annual meeting of shareholders following the Effective Date of the Settlement a proposal to amend Cendant's Certificate of Incorporation de-classifying the Board of Directors and provide that all directors shall be elected annually; and

Within 30 days of the effective date of the Cendant Settlement, the Board will adopt a By-Law precluding repricing of any employee stock option after its grant, unless approved by a majority vote of voting shareholders (except in accordance with its terms to take into account corporate transactions such as stock dividends, stock splits, recapitalizations, merger or distributions).

**E&Y Settlement.**

20.     In full settlement of the Action against E&Y, E&Y will pay $335,000,000 in cash (the "E&Y Settlement Amount").

21.     On or after April 14, 2000, E&Y shall deposit the E&Y Settlement Amount into an interest-bearing Escrow Account, which will earn interest for the benefit of Class Members. If E&Y does not deposit the E&Y Settlement payment into the Escrow Account by April 14, 2000, interest shall accrue on the E&Y Settlement payment from April 15, 2000 at the rate of 5% per annum until the Settlement Amount is deposited into the Escrow Account. In any event, the Settlement Amount plus all accrued interest shall be deposited into the Escrow Account no later than 90 days after District Court Approval.

22.     The E&Y Settlement is conditioned on the closing of a transaction between E&Y and Cap Gemini S.A., in which Cap Gemini will buy the consulting business of E&Y (the "Transaction"). E&Y is under no obligation to Lead Plaintiffs or to Class Members to consummate the Transaction. If E&Y does not consummate the Transaction, for whatever reason, E&Y has the

- 14 -

unilateral right to terminate the E&Y Settlement, and to obtain immediate return of the E&Y Settlement Amount, if previously paid, plus all accrued interest thereon. If the Transaction does not close by June 12, 2000, Lead Plaintiffs have the unilateral right to terminate the E&Y Settlement.

**RELEASES AND DISMISSAL OF THE ACTION.**

23.     If the Cendant Settlement is approved, in consideration for the $2,851,500,000 to be paid by Cendant, the potential future recoveries from E&Y, and the corporate governance changes the Court will enter a Judgment that will dismiss with prejudice all of the Class Members' claims against Cendant and all the Individual Defendants. The Court will bar and permanently enjoin Lead Plaintiffs and each Class Member, whether or not such Class Member has submitted a Proof of Claim, from prosecuting any Released Claims (as defined below in paragraph 25), and any such Class Member shall be conclusively deemed to have fully, finally and forever released, relinquished and discharged any and all such Released Claims.

24.     Similarly, if the E&Y Settlement is approved, in consideration for the $335,000,000 to be paid by E&Y the Court will enter a Judgment that will dismiss with prejudice all of the Class Members' claims against E&Y, and bar and permanently enjoin Lead Plaintiffs and each Class Member, whether or not such Class Member has submitted a Proof of Claim, from prosecuting any Released Claims (as defined below in paragraph 25), and any such Class Member shall be conclusively deemed to have fully, finally and forever released, relinquished and discharged any and all such Released Claims.

25.     Each Class Member shall release all "Released Claims," which include any and all claims, actions and causes of action in law or equity, suits, obligations, debts, demands, agreements, promises, liabilities, controversies, damages, losses, attorneys' fees, costs or expenses of any kind

- 15 -

whatsoever, whether based on common law or on any federal or state statute, rule, regulation, or other law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, suspected or unsuspected, fixed or contingent, and whether or not concealed or hidden, that are based upon, are related to, arise from, or are connected with the purchase, acquisition, sale or disposition of HFS, CUC or Cendant publicly-traded securities (including call options on Cendant common stock), except PRIDES investment units, during the Class Period, including, without any limitation upon the generality and scope of the foregoing, and simply in order to describe the foregoing, claims that are based upon or relate to any facts, circumstances, statements, omissions, events or other matters raised or referred to in the pleadings in the Action or which could have been asserted against Defendants and the Released Parties by Lead Plaintiffs and any Class Member, including, but not limited to any of the following:  (i) the claims, actions or causes of action arising out of or in any way based upon, connected with or related to any prospectus, registration statement, proxy statement, annual report, quarterly earnings report, press release or other publicly disseminated documents and public statements of Cendant, CUC or HFS during or relating to the period May 31, 1995 through and including August 28, 1998, (ii) any disclosures, statements, representations, actions, events, omissions or failures to act of Defendants; or (iii) the transactions, events, occurrences, acts or omissions related directly or indirectly to or arising out of the subject matters referred to or set forth in the Complaint in the Action, or facts and claims for relief which could have been alleged or litigated therein.  Lead Plaintiffs and all Class Members, whether or not any such person submits a Proof of Claim and Release or otherwise shares in the Settlement Fund, through or on behalf of themselves and each of their predecessors, successors, parents, subsidiaries, affiliates, custodians, agents, assigns, representatives, heirs, executors, trustees, administrators and

- 16 -

any other person or entity having any legal or beneficial interest in the publicly-traded securities of CUC or Cendant (including call options on Cendant common stock), except PRIDES investment units, purchased or acquired by any Class Member, will be deemed by this settlement to release and forever discharge the Released Parties from any and all of the Released Claims. Class Members also specifically waive the benefit of the provisions of Section 1542 of the Civil Code of the State of California which provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTION OF THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR." Class Members acknowledge the significance and consequence of this waiver of the provision of Section 1542, waive the provisions and protections of section 1542, assume full responsibility for any loss that may be incurred by reason of such waiver, and hereby release unknown and unsuspected claims. However, "Released Claims" shall not be construed to mean any claim brought, or that could have been brought, by purchasers of the PRIDES investment units as such claims relate to the purchase or acquisition of PRIDES investment units.

**REASONS FOR THE SETTLEMENTS.**

26.    Lead Plaintiffs considered a variety of factors in negotiating and deciding to accept the Settlements, and to recommend that the Court approve them. These reasons include:

a.    This is the largest securities class action settlement in United States history. The Cendant Settlement is more than three times the highest recovery ever previously obtained in a securities class action, and approximately ten times the recovery in the next

- 17 -

largest securities class action involving fraudulent financial statements. The E&Y Settlement is the largest amount ever paid by an accounting firm in a securities class action.

b.    Together, the Cendant and E&Y Settlement payments represent over 37% of the recoverable damages, as estimated by Lead Plaintiffs' expert–an extraordinary result in a case of this magnitude. Further, based on Lead Counsel's experience and survey of claims administrators, it is reasonable to assume that 25-30% of potential claimants will not file claims for a distribution from the Settlement Fund, so the actual distribution will be an even greater percentage of recoverable damages.

c.    The Settlements are all cash, with the interest earned guaranteed starting on July 1, 2000 (on the Cendant Settlement Amount) and on April 15, 2000 (on the E&Y Settlement Amount).

d.    The corporate governance improvements agreed to by Cendant are far-reaching and unprecedented in securities class action litigation, and effected important changes to Cendant's corporate functioning.

e.    The risks involved in succeeding at trial against all Defendants and collecting from them are substantial. The PSLRA's proportionate liability requirements, under which a defendant may be obligated to pay only for the portion of damages that defendant is held responsible for, may have placed a high proportion of liability on certain Individual Defendants, who would not have been able to shoulder a substantial amount of damages, and a correspondingly small proportion of liability on Cendant and E&Y. Although E&Y is a vital "Big 5" public accounting firm, collecting any more than $335 million would have been unlikely. For similar reasons, Lead Plaintiffs and Lead Counsel believe that collecting more

than $2.85 billion from Cendant, the HFS Individual Defendants and the other Individual Defendants would have been unlikely.

27.     LEAD PLAINTIFFS—THE THREE LARGEST PUBLIC PENSION FUNDS IN THE UNITED STATES—WERE INSTRUMENTAL IN NEGOTIATING THE TWO SETTLE-MENTS; LEAD PLAINTIFFS STRONGLY ENDORSE THESE TWO SETTLEMENTS AND RECOMMEND THAT THEY BE APPROVED.

28.     Lead Plaintiffs decided to accept the Settlements after consultation with Lead Counsel and the experts retained to assist them, and after extensive investigation of the hundreds of thousands of pages of documents provided to Lead Plaintiffs in discovery.  Consequently, Lead Plaintiffs and Lead Counsel have determined that the Settlements are in the best interests of Class Members.

**PLAN OF ALLOCATION.**

29.     After approval of the Settlements by the Court and upon satisfaction of the other conditions to the Settlements, the Settlement Fund will be distributed as follows:

     a.     To pay costs and expenses in connection with providing Notice to Class Members and administering the Settlements on behalf of Class Members;

     b.     To reimburse Lead Counsel for, and to pay, expenses incurred in connection with the prosecution of this Action, with interest thereon if and to the extent allowed by the Court;

     c.     To pay Lead Counsel's fees, with interest thereon if and to the extent allowed by the Court;

     d.     To pay the reasonable costs incurred in the preparation of any tax returns required to be filed on behalf of the Settlement Fund as well as the taxes (and any interest

- 19 -

and penalties determined to be due thereon) owed by reason of the earnings of the Settlement Fund, including taxes and tax expenses; and

   e.  Subject to final approval by the Court of the Plan of Allocation, which is attached to this Notice, meaning that the Order granting approval is affirmed on appeal or certiorari, or is no longer subject to review by appeal or certiorari and the time for any petition for rehearing, appeal or review by appeal or certiorari has expired, the balance of the Settlement Fund (the "Net Settlement Fund"), shall be distributed in accordance with the Plan of Allocation to Class Members who submit valid, timely Proofs of Claim ("Authorized Claimants"). However, there shall be no distribution of any of the Settlement Amounts to any Class Member until a plan of allocation is finally approved and is affirmed on appeal or certiorari and is no longer subject to review by appeal or certiorari and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

30.  There will be no return to Cendant or E&Y of any settlement payment if the Settlements are finally approved. All settlement funds will be used, as described above, for the benefit of Class Members.

31.  The complete Plan of Allocation, which was prepared by Lead Counsel without any involvement by Defendants and which includes a detailed description of the reasons for the Plan as presented, is annexed at the end of this Notice. In developing the Plan of Allocation, Lead Counsel consulted with Forensic Economics to determine the most fair and reasonable method of distributing the Settlement Fund. Lead Plaintiffs have reviewed the Plan of Allocation and recommend that it be approved as fair, reasonable and in the best interests of Class Members.

32.     Approval of the Settlements is independent from approval of the Plan of Allocation. Any determination with respect to the Plan of Allocation will not affect the Settlements, if approved.

**PARTICIPATION IN THE SETTLEMENT; PROOFS OF CLAIM.**

33.     Only those Class Members who purchased or acquired Cendant or CUC publicly traded securities (including call options on Cendant common stock), except PRIDES investment units, during the Class Period and were damaged will be eligible to share in the distribution of the Settlement Fund. Each person wishing to participate in the distribution of the Settlement Fund must timely submit a valid and separate "Proof of Claim" no later than _____, 2000 to the address set forth in the attached Proof of Claim form. Further, each Proof of Claim must be supported by such documents specified in the Proof of Claim as are reasonably available to the Authorized Claimant. The Proof of Claim includes a general release of each of the Defendants, as well as various other affiliated persons and entities, in the form set forth in the Proof of Claim accompanying this Notice. Unless otherwise ordered by the Court, any Class Member who fails to submit a Proof of Claim by _____, 2000 shall be forever barred from receiving any payments pursuant to the Settlements set forth in the Stipulations, but will in all other respects be subject to the provisions of the Stipulations, including the terms of any judgment entered and the releases given. This means that each Class Member releases the Released Claims against the Defendants and is enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Claims against any of the Defendants regardless of whether or not such Class Member submits a Proof of Claim. Defendants are not responsible for and shall not be liable for any disputes and decisions regarding the form, content, timeliness and adequacy of Proofs of Claim or any payments made pursuant to Proofs of Claim.

34.     The Court has reserved jurisdiction to allow, disallow or adjust on equitable grounds the Claim of any Class Member. The Court also reserves the right to modify the Plan of Allocation without further notice to Class Members. Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants. No person shall have any claim against Lead Counsel or the Claims Administrator or other agent designated by Lead Counsel based on the distributions made substantially in accordance with the Stipulation and the Settlements contained therein, the Plan of Allocation, or further orders of the Court. Defendants and their respective counsel shall have no involvement in or responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the determination, administration and calculation of, or payment pursuant to, Proofs of Claim, the payment or withholding of taxes owed by the Settlement Fund, acts or omissions of the Escrow Agent or any losses incurred in connection therewith.

**THE HEARING.**

35.     On _____, 2000, at _____ __.m., the Honorable William H. Walls, United States District Court Judge, will hold a hearing (the "Settlement Hearing") at the United States Courthouse, District of New Jersey, Martin Luther King, Jr. Courthouse, Courtroom 4D, Newark, New Jersey 07101, for the purpose of separately considering:

a.      Whether a Judgment should be entered (1) approving the Cendant Settlement as fair, reasonable and adequate; (2) dismissing with prejudice this Action against Cendant and the Individual Defendants; and (3) barring all Class Members from prosecuting, pursuing, or litigating any of the Released Claims against Cendant and any of the Individual Defendants;

b.      Whether a Judgment should be entered (1) approving the E&Y Settlement as fair, reasonable and adequate; (2) dismissing this Action with prejudice against E&Y; and (3) barring all Class Members from prosecuting, pursuing, or litigating any of the Released Claims against E&Y;

c.      Whether the proposed Plan of Allocation should be approved as fair, reasonable and adequate; and

d.      Whether to approve Lead Counsel's application for attorneys' fees and payment of costs and expenses.

The Settlement Hearing may be continued or adjourned from time to time by the Court at the Settlement Hearing or any continued or adjourned session thereof, without further notice to the Class or Class Members.

36.    Any Class Member may appear at the Settlement Hearing and be heard on any of the foregoing matters. Provided, however, that no such person shall be heard, unless his, her or its objection or opposition is made in writing and, together with copies of all other papers and briefs to be submitted to the Court at the Settlement Hearing, by him, her or it (including proof of all purchases or acquisitions of CUC or Cendant publicly-traded securities [including call options on Cendant common stock], except PRIDES investment units, during the Class Period), is filed with the Court and served for *receipt* by counsel listed below no later than _____, 2000, and showing due proof of such service on Lead Counsel:

| | |
|---|---|
| Leonard Barrack, Esq. | Max W. Berger, Esq. |
| Gerald J. Rodos, Esq. | Daniel L. Berger, Esq. |
| Jeffrey W. Golan, Esq. | Jeffrey N. Leibell, Esq. |
| Leslie B. Molder, Esq. | Bernstein Litowitz Berger & |
| Barrack, Rodos & Bacine |   Grossmann LLP |

3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

1285 Avenue of the Americas
New York, NY 10019

and on counsel for Cendant, for the HFS Individual Defendants, and for E&Y:

| Counsel for Cendant: | Counsel for the HFS Individual Defendants: | Counsel for E&Y: |
|---|---|---|
| Jonathan J.. Lerner, Esq. | James G. Kreissman, Esq. | Alan N. Salpeter, Esq. |
| Samuel Kadet, Esq. | Jacob S. Pultman, Esq. | Caryn Jacobs, Esq. |
| Joseph N. Sacca, Esq. | Simpson Thatcher & Bartlett | Mayer, Brown & Platt |
| Skadden, Arps, Slate, | 425 Lexington Avenue | 190 South LaSalle Street |
| Meagher & Flom LLP | New York, NY 10017 | Chicago, IL 60603-3441 |
| Four Times Square | | |
| New York, NY 10036 | | |

37.     Unless otherwise ordered by the Court, any Class Member who does not make and serve his, her or its objection or opposition in the manner provided shall be deemed to have waived all objections and opposition to the foregoing matters.

ATTORNEYS' FEES, COSTS AND EXPENSES OF PLAINTIFFS' ATTORNEYS.

38.     At the conclusion of the Settlement Hearing described above, Lead Counsel will apply to the Court for a collective award of attorneys' fees and payment of costs and expenses.

39.     At the August 4, 1998 hearing on the motions for appointment of lead plaintiff, the Court appointed CalPERS, the NYSCRF and the NYCPF as Lead Plaintiffs for the Class except purchasers of PRIDES. The Court further stated that it would select Lead Counsel for the Action only after a process where interested law firms, whether or not then representing any plaintiff in the consolidated actions, would submit competitive bids under guidelines provided by the Court, including submitting qualifications and proposals for fees to be paid. The Court stated that it would select the lowest qualified bid submitted.

- 24 -

40.     At the August 19, 1998 hearing concerning the bid grid format to be used, the Court directed all competitive bids to be made *in camera*. By letters to counsel dated August 27 and 28, 1998, the Court set forth the bid-grid format and bidding guidelines to be used in those submissions. Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Barrack, Rodos & Bacine ("BR&B") submitted a joint competitive bid in compliance with the Court's directions. Under the Court's Order, if the Court determined BLB&G and BR&B to be the lowest qualified bidder, then BLB&G and BR&B, as previously selected counsel for Lead Plaintiffs, would have been appointed lead counsel for the Class except purchasers of PRIDES. The Order further provided that, in the event the Court determined another law firm to be the lowest qualified bidder, then BLB&G and BR&B, if determined by the Court to be otherwise qualified, would be provided the opportunity to agree to the terms of that lowest qualified bid, and, if BLB&G and BR&B accepted those terms, the Court would appoint BLB&G and BR&B as lead counsel for the Class except purchasers of PRIDES.

41.     Following extensive publication of the competitive bidding procedure adopted by the Court, 12 separate bids were submitted from different law firms (some not previously representing any plaintiffs in the Action). The Court considered these bids in detail–both in connection with attorney qualifications and the amount of the bids. After considering all competitive bids submitted, the Court selected a bid submitted by a firm other than Lead Counsel. The Court also found both BLB&G and BR&B to be qualified and, therefore, provided BLB&G and BR&B the opportunity to match the bid determined by the Court to be the lowest qualified bid. BLB&G and BR&B agreed to match the lowest qualified bid, and, by Order filed October 13, 1998, the Court appointed BLB&G and BR&B Lead Counsel for Lead Plaintiffs and the Class, and held that the results of the auction will serve as a benchmark of reasonableness.

42.     Lead Counsel will apply for an award of attorneys' fees in the amount of 8.275 percent of the Net Settlement Fund, together with interest after payment of expenses as awarded by the Court.  This fee application is in strict compliance with the fee parameters in the grid that was approved by the Court in advance as the lowest qualified bid proposal.  These parameters are set forth, as percentages of total Class recovery, in the following fee grid approved by the Court:

| | | PHASE AT WHICH LITIGATION IS RESOLVED | | | |
|---|---|---|---|---|---|
| | | During pleadings through adjudication of any motion to dismiss | During discovery through adjudication of S.J. motion | After adjudication of SJ motion through trial verdict | Post-trial |
| R E C O V E R Y  I N C R E M E N T  I N  D O L L A R S | First 100 million | 2.0 | 2.0 | 3.0 | 3.0 |
| | Second 100 million | 3.0 | 3.0 | 4.0 | 4.0 |
| | Third 100 million | 4.0 | 4.0 | 5.0 | 5.0 |
| | Next 50 million | 5.0 | 5.0 | 6.0 | 6.0 |
| | Next 50 million | 6.0 | 6.0 | 7.0 | 7.0 |
| | Next 50 million | 7.0 | 7.0 | 8.0 | 8.0 |
| | Next 50 million | 8.0 | 8.0 | 9.0 | 9.0 |
| | Over 500 million | 9.0 | 9.0 | 10.0 | 10.0 |

Lead Counsel are seeking attorneys' fees under the second column of the fee grid, because the Settlements were reached during discovery, after adjudication of motions to dismiss but prior to the adjudication of motions for summary judgment.  Lead Counsel are not seeking to place a value on

- 26 -

the corporate governance changes obtained from Cendant, nor will Lead Counsel apply for an attorneys' fee as a result of such corporate governance changes.

43.     The application for reimbursement of expenses, which also will be made at the conclusion of the Settlement Hearing, shall not exceed $15,855,000, together with interest earned on said sums. This amount includes fees and expenses of the experts retained by Lead Plaintiffs on behalf of the Class: The fee for Lazard's services (exclusive of expense reimbursement) is approximately $13.1 million, which fee was negotiated by Lead Plaintiffs after an exhaustive search and bidding process in which Lead Counsel, with the assistance of Arthur Ainsberg, identified and contacted sixteen top-tier investment banking firms and interviewed six of those firms, prior to the retention of Lazard; the fee for Forensic Economics' services (exclusive of expense reimbursement) is $245,000, which is based on hourly charges negotiated by Lead Plaintiffs in advance after the consideration of other damages experts; the fee for MP&S's services (exclusive of expense reimbursement) is $348,000; and the fee for Arthur Ainsberg is $250,000.

44.     Approval of the Settlements is independent from approval of Lead Counsel's application for an award of attorneys' fees and payment of costs and expenses. Any determination with respect to Lead Counsel's application for an award of attorneys' fees and payment of costs and expenses will not affect the Settlements, if approved.

**NOTICE TO BANKS, BROKERS AND OTHER NOMINEES.**

45.     Banks, brokerage firms, institutions, and other persons who are nominees who purchased or acquired CUC or Cendant publicly traded securities (except PRIDES) during the Class Period of May 25, 1995 through and including August 28, 1998, are required within ten (10) days of receipt of this Notice, to: (1) provide Lead Counsel with the names and addresses of such

- 27 -

'beneficial purchasers; or (2) forward a copy of this Notice to each such beneficial purchaser and provide Lead Counsel with written confirmation that the Notice has been so forwarded. Upon request, Lead Counsel will pay your reasonable costs and expenses of complying with this provision upon submission of appropriate documentation. Additional postage pre-paid copies of this Notice may be obtained for forwarding to such beneficial owners. All such correspondence should be addressed as follows:

> In re Cendant Corporation Litigation
> Claims Administration
> P.O. Box 510
> Philadelphia, Pennsylvania 19105-0510
> (800) 379-6239
> www.heffler.com

**EXAMINATION OF PAPERS AND INQUIRIES.**

46.     This Notice contains only a summary of the terms of the proposed Settlement. For a more detailed statement of the matters involved in this Action, reference is made to the pleadings, to the Stipulations and to other papers filed in this Action which may be inspected at the Office of the Clerk of the United States District Court, United States Courthouse, District of New Jersey, Martin Luther King, Jr. Courthouse, Newark, New Jersey 07101 during regular business hours of each business day. The Cendant and E&Y Stipulations represent the entire agreements between Lead Plaintiffs and Cendant and the HFS Individual Defendants, and Lead Plaintiffs and E&Y, respectively, and any inconsistencies between the Stipulations and this Notice will be controlled by the language of the Stipulations.

- 28 -

47.     Inquiries regarding this Action should be addressed as follows:

> In re Cendant Corporation Litigation
> Claims Administration
> P.O. Box 510
> Philadelphia, Pennsylvania 19105-0510
> (800) 379-6239
> www.heffler.com

Lead Counsel identified below are available to answer questions from Class Members concerning

any matter contained in this Notice:

| | |
|---|---|
| Leonard Barrack, Esq. | Max W. Berger, Esq. |
| Gerald J. Rodos, Esq. | Daniel L. Berger, Esq. |
| Jeffrey W. Golan, Esq. | Jeffrey N. Leibell, Esq. |
| Leslie B. Molder, Esq. | Bernstein Litowitz Berger & |
| Barrack, Rodos & Bacine | Grossmann LLP |
| 3300 Two Commerce Square | 1285 Avenue of the Americas |
| 2001 Market Street | New York, NY  10019 |
| Philadelphia, PA  19103 | (212) 554-1400 |
| (215) 963-0600 | |

### PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.

BY ORDER OF THE COURT


DATED: _____, 2000     _____

WILLIAM H. WALLS
UNITED STATES DISTRICT JUDGE

- 29 -