# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————— :
IN RE: CENDANT CORPORATION    :     Master File No. 98-CV-1664 (WHW)
SECURITIES LITIGATION         :
                              :     **OPINION**
———————————————— :
                              :
This document Relates to: Reliant Trading,  :
et al. v. Cendant Corp. et al.   :     No. 98-CV-0381 (E.D. Wisc)
————————————————  :
                              :
Kennilworth Partners LP, et al. v. Cendant  :
Corp., et al.                 :     No. 98-CV-0759 (WHW)
———————————————— :

     Presently before the Court are three motions. Plaintiffs Kennilworth Partners L.P., Soundshore Partners L.P. and Soundshore Holdings Ltd. (collectively "Kennilworth") and Reliant Trading and Shephard Trading Ltd. (collectively "Reliant") (Kennilworth and Reliant collectively are "Plaintiffs") have each filed a motion for summary judgment as to their breach of contract claims against defendant Cendant only.  As part of its motion, Kennilworth also seeks summary judgement against Cendant on its claims for violation of Rule 10b-5.  17 CFR § 240.10b-5 (2004).  Cendant has filed a cross-claim for summary judgement on the breach of contract claims alleging that plaintiffs lack standing.  Oral argument was held on September 26, 2005.  Plaintiffs' motions for summary judgment and Cendant's cross-motion for summary judgment are denied.

**FACTS & PROCEDURAL BACKGROUND**

Plaintiffs Kennilworth and Reliant are companies in the business of investment in securities and other financial instruments. Defendant Cendant is a diversified corporation formed from the merger of defendants CUC Corporation ("CUC") and HFS, Inc. ("HFS").

**The HFS Notes**

In February 1996, HFS registered and issued $210 million in 4 3/4% Convertible Senior Notes due 2003 (the "HFS notes") pursuant to an Indenture dated February 28, 1996 and a Supplemental Indenture No. 1 of the same date (collectively the "Indenture").  Plaintiffs Kennilworth and Reliant purchased a number of the HFS Notes.  In total, Kennilworth purchased $11,800,000 par value of HFS Notes and in December 1997, Reliant purchased $18,881,00 par value of HFS Notes.  Additionally, in February, 1997, CUC issued 3% convertible notes due 2002 (the "CUC Notes"). Between March 18, 1998 and March 20, 1998, Kennilworth purchased CUC Notes in the open market for approximately $25 million.  Under the terms of the Indenture, the holders of these notes received the right to convert them into shares of HFS common stock at a predetermined price.

The Indenture also contained what is commonly known as a "no-action" clause, a provision included in most bond indentures which expressly limits bondholders from bringing suit against the issuer based on any rights guaranteed by the Indenture except in limited circumstances.  The "no-action" clause contained in Indenture requires bondholders to notify a

Trustee prior to instituting any action with regard to the securities issued.[1]  The Indenture does

provide an exception to the Trustee notification requirement in Section 508 which exempts suits

seeking the payment of principal and interest:

> Notwithstanding any other provision in this Indenture, the Holder of any
> security shall have the right, which is absolute and unconditional, to receive
> payment, as provided herein (including, if applicable, Article Fourteen) and in
> such Security, of the principal of (and premium, if any, on) and (subject to Section
> 307) interest on, such Security or payment of such coupon on the respective Stated
> Maturities expressed in such Security or coupon (or, in the case of redemption, on
> the Redemption Date) and to institute suit for the enforcement of any such
> payment, and such rights shall not be impaired without the consent of such
> Holder.

Pearlman Decl. Ex. C § 508.  On December 17, 1997, defendant CUC merged with defendant

HFS.  The resulting entity was named Cendant Corporation.  Following the merger, holders of

HFS notes had the option to convert them into Cendant common stock at $27.76 per share (the

"conversion price").  The conversion was subject to the terms and conditions of the Indenture

and gave Cendant the right to redeem the HFS notes for cash at 103.393% of their face value.

---

[1]  Specifically, the Indenture prohibits "holders" from initiating suit unless they meet
certain prerequisites including:
> (1) such Holder has previously given written notice to the Trustee
> of a continuing Event of Default with respect to the Securities of that series;
> (2) the Holders of not less than 25% in principal amount of the
> Outstanding Securities . . . shall have made written request to the Trustee to
> institute proceedings in respect of such Event of default in its own name as
> Trustee hereunder;
> (3) such Holder or Holders have offered to the Trustee reasonable
> indemnity against the cost, expenses and liability to be incurred in compliance
> with such request . . . .

Pearlman Decl. Ex. C § 507.

-3-

This right was triggered only if Cendant's common stock price had exceeded $38.86 per share for twenty days within a period of thirty consecutive trading days before the notice of redemption. In such case, the holders of HFS notes had the option of accepting the cash payment or converting the HFS notes into Cendant stock. On April 3, 1998, with its stock trading at approximately $40 per share, Cendant announced its intention to redeem the HFS notes.

On April 6, 1998, Kennilworth Partners, L.P. converted $6 million principal amount of HFS notes into 216,000 shares of Cendant common stock at the conversion rate of $27.76.  On the same day, Reliant Trading converted $9,441,000 principal amount of HFS notes into 340,140 shares of Cendant stock and Shepherd Trading Ltd. converted $9,440,000 principal amount of HFS notes into 340,104 shares of Cendant stock, both at the conversion rate of $27.76. Kennilworth also redeemed for cash approximately $2.9 million of HFS notes purchased on the open market. On April 13, 1996 Soundshore Partners L.P. and Soundshore Holdings Ltd. converted $3 million principal amount of HFS notes into 108,000 shares of Cendant stock at the conversion price of $27.76.

**Accounting Irregularities**

On April 15, 1998, Cendant announced that it had discovered accounting irregularities in the membership clubs operations unit which had been part of the CUC business. Cendant also announced that it would restate annual and quarterly net income and earnings per share for 1997 and might restate certain other periods. On the following day, Cendant's stock price fell 46 percent. Eventually, Cendant restated earnings for the calendar years ended December 31, 1995,

1996 and 1997 (as well as all quarters in 1996 and 1997) and the first two quarters of 1998. On September 29, 1998, Cendant publicly announced that it had lost $217.2 million in 1997 instead of earning $55.5 million as it had reported earlier. Plaintiffs Kennilworth and Reliant sought rescission of their conversion of HFS Notes into Cendant common stock based on the publicly announced accounting fraud. Cendant refused to rescind the conversions.

On January 25, 1999, the Kennilworth filed an amended complaint in the United States District Court for the Southern District of New York. That complaint, which was transferred to this Court on February 4, 1999, alleged violations of the Securities and Exchange Act against Cendant, HFS, certain HFS Directors, certain CUC Directors and E & Y, and a breach of contract claim against Cendant and HFS. In an August 10, 1999 opinion, this Court granted defendants' motions to dismiss the federal securities claims with prejudice except Kennilworth's Rule 10b-5 claim which were dismissed without prejudice. Kennilworth later filed a Second Amended Complaint on March 9, 2000, realleging its fraud claims.

On December 15, 1999, Reliant filed a First Amended Complaint in District Court, Eastern District of Wisconsin and the matter was consolidated before this Court.

**STANDARD FOR MOTIONS FOR SUMMARY JUDGEMENT**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See id. at 248.  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  See Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

## DISCUSSION

### A.    Kennilworth's summary judgment motion for Rule 10b-5 claim

The elements of a 10b-5 claim have been extensively argued in this case.  Specifically, this Court has noted that plaintiffs alleging fraud under the federal securities laws against Cendant "must show that Cendant, in connection with the purchase or sale of a security, (1) misrepresented or omitted (2) a material fact (3) with knowledge or recklessness (scienter), and

(4) reasonable reliance by plaintiffs with (5) consequent injury." <u>Yaeger</u>, 109 F. Supp. 2d at 230. Here the parties dispute the elements of scienter and reliance.

Cendant argues that Kennilworth fails to allege reliance, either actual or by utilizing the fraud-on-the-market doctrine. Cendant points to certain evidence in the record including testimony by Kennilworth officers that they read and relied on various "Ks, the Qs, the press releases, the annual report" and a host of "merger related documents" and claims that such vague reliance is insufficient to establish the required element of reliance. Cendant contends that Kennilworth must allege specific fraudulent statements relied upon. <u>Angelastro v. Prudential-Bache Sec. Inc.</u>, 113 F.R.D. 579, 585 (D.N.J. 1986). Cendant urges that the presumption of reliance that is established under the fraud-on-the-market theory is likewise unavailable here because Kennilworth has not demonstrated that the HFS Notes were traded on an efficient market or alternatively, that Kennilworth's short sales of Cendant stock renders the fraud on the market theory inapplicable because it demonstrates that Kennilworth was betting against the integrity of the market price. <u>Zlotnick v. Tie Communications</u>, 836 F.2d 818 (3d Cir. 1988).

Cendant contends that Kennilworth has failed to establish that the Notes were traded on an open and efficient market and thus is precluded from utilizing the fraud-on-the-market doctrine. This argument fails. This Court has previously noted in rejecting a similar argument made in the class action, that both HFS and CUC Notes are traded on an open and efficient market. <u>In re Cendant Corp. Litig.</u>, 60 F. Supp. 2d 354, 376 (D.N.J. 1999). Hence, Kennilworth satisfies the requirement of demonstrating reliance by relying on the fraud-on-the-market

doctrine.  Because Kennilworth has established reliance through fraud on the market, the Court does not address the parties' arguments with regard to specific reliance.

Cendant also argues that the Court should deny Kennilworth summary judgment on their Rule 10b-5 claim because they have failed to establish scienter as required by the federal securities fraud statutes.  Kennilworth alleges that the defense of "adverse agent" (which this Court has raised previously to deny summary judgement motions by other plaintiffs) is not available to Cendant because certain events in the last few years, including the criminal conviction of CUC Chief Operating Officer E. Kirk Shelton and the guilty plea of Cosmo Corigliano, Senior V.P. and Chief Financial Officer of CUC, demonstrate culpable intent on the part of employees of Cendant which is imputable to the company.  See Yaeger v. Cendant Corp. (In re Cendant Corp. Sec. Litig.), 109 F. Supp. 2d 225 (D.N.J. 2000).

In response to Kennilworth's arguments, Cendant contends that no new material facts have been raised since this Court's decision in Yaeger to justify summary judgment.  In Yaeger, plaintiffs' motions for summary judgement on their 10b-5 claims were denied because they failed to demonstrate scienter on the part of individual CUC or Cendant employees that could be imputed to Cendant.  Id. at 230-31 (D.N.J. 2000).  Cendant claims that the recent admission or finding of guilt on the part of Cendant employees cannot conclusively establish scienter on the part of Cendant for summary judgement purposes and fails to establish that there is no issue of material fact with regard to Cendant's mental state.

As noted, Kennilworth points to the conduct of individual Cendant officers and more recently the criminal conviction of CUC's COO E. Kirk Shelton and the guilty plea of CUC's CFO Cosmo Corigliano for charges related to the underlying alleged fraud to support its contention that Cendant acted with the necessary culpable intent and disproving the adverse agent defense.  While the Court is mindful that nearly five years have elapsed since this Court's decision in Yeager, there is simply no substantial new evidence in the record presented by Kennilworth to support a finding that there is no genuine dispute as to the culpable mental state of defendant Cendant.  While the recent pleas and convictions of certain Cendant executives do provide some support for the argument that such conduct may be imputable to Cendant, this Court, absent more, cannot say that these facts conclusively establish that there is no issue of material fact with regard to this issue.  The Court notes that the criminal appellate period has not yet ended. The plea or conviction of these individuals, without corresponding testimony or documentary evidence demonstrating that the alleged conduct of these corporate executives is imputable to Cendant, demonstrates that a genuine issue of material fact exists and that summary judgment is not appropriate.[2]  Given this, Kennilworth's motion cannot prevail.  There is no new evidence on the record that precludes Cendant from raising the "adverse agent" defense.  As of now, Kennilworth's motion for summary judgment on its 10b-5 fraud claim does not reflect a lack of a genuine issue of material fact regarding Cendant's culpability.  Kennilworth's motion for summary judgement on its 10b-5 claim is denied without prejudice.

---

[2]  As a corollary, the Court notes that plaintiffs are limited in their ability to establish facts that demonstrate culpable conduct on the part of Cendant largely because of the Court's discovery stay as to certain Cendant officers pending ongoing criminal trials.

**B.**     **Plaintiffs Reliance and Kennilworth's Breach of Contract Claims**

Plaintiffs and Cendant do not dispute that the Indenture is a contract governed by New York law.  Plaintiffs argue that Cendant breached the Indenture by using the April 3, 1998 notice of redemption in bad faith, thereby breaching the implied covenant of good faith and fair dealing.  Specifically, Plaintiffs argue that were it not for the accounting fraud, Cendant's stock price would not have been as high as it was allowing Cendant to trigger the redemption.  Plaintiffs assert that the Indenture's trigger that required Cendant's common stock price to trade at or above $38.86 per share for twenty days within a period of thirty consecutive trading days before the notice of redemption, was a condition precedent to execution of Indenture and that Cendant's fraud enabled the occurrence of the condition.

Likewise, Plaintiffs argue that the defense of "adverse agent exception" is not applicable to Cendant in the context of a breach of contract claim.  While Plaintiffs recognize that this Court has dismissed other claims in related Cendant litigation based on the "adverse agent exception," they distinguish those holdings by noting that the claims dismissed in those earlier actions had a required element of scienter, which they argue is not applicable to their breach of contract claim.  Plaintiffs cite agency principles for the proposition that (i) a principal can be bound by an agent acting adversely to the principal when the acts of the agent result in a violation of contractual duties and (ii) a principal who receives a benefit as a result of the agent's conduct cannot escape responsibility for that benefit if it was obtained through fraudulent means.

In response, Cendant claims that Plaintiffs have failed to allege that Cendant acted "intentionally and purposely" to prevent the Plaintiffs from receiving the contract's benefits.

Cendant argues that Plaintiffs failed to allege culpable intent on the part of the corporation which they claim is a required element of a breach of an implied duty of good faith and fair dealing. Cendant contends that Plaintiffs have not demonstrated facts to prove that there is no genuine issue of material fact that Cendant redeemed the notes with knowledge that the stock price had been "intentionally and purposefully" manipulated.  Chem. Bank v. Stahl, 712 N.Y.S.2d 452, 462 (App. Div. 2000).

Neither party disputes that the Indenture is a contract and that the contract is governed by New York law.  See e.g. Broad v. Rockwell Int'l Corp., 642 F.2d 929 (5th Cir. 1981) (applying New York law to a breach of contract claim relating to a bond indenture).  Plaintiffs allege that Cendant breached the Indenture by violating the implied duty of good faith and fair dealing which resulted in plaintiffs not receiving the benefits of the Indenture.  As the New York Court of Appeals has stated, the duty of good faith and fair dealing is "[i]mplicit in all contracts . . . in the course of contract performance."  Dalton v. Educational Testing Serv., 87 N.Y.2d 384, 389 (1995).  The Dalton court recognized that the duty of good faith and fair dealing "embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract,'" Id. (citing Kirke La Shelle Co. v Armstrong Co., 263 NY 79, 87 (1933)), and this "pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion."  Id.

Cendant argues that in order to demonstrate a breach of the duty of good faith and fair dealing, Plaintiffs must establish "culpable intent on the part of the defendant."  (Def. Br. at 14). In other words, Cendant argues that plaintiffs must establish an intentional or purposeful action

on the part of Cendant to establish a breach of the duty of good faith.  <u>See</u> <u>Chem. Bank v. Stahl</u>, 712 N.Y.S.2d 452 (App. Div. 2000).  Cendant claims that Plaintiffs have failed to demonstrate a required element of their claim for breach of contract, namely culpable intent, and are not entitled to summary judgment.

The argument regarding culpable intent imputed from individual employees to the corporation is an argument with which the Court is familiar, but Plaintiffs contend that the nefarious intent of greedy executives is simply not relevant to their claim premised on a breach of an implied duty of good faith and fair dealing in a contract.  They claim that the so-called "adverse-agent" exception raised by Cendant in the context of Plaintiffs' breach of contract claim cannot prevent the principal (the corporation) from being bound by the actions of its agents (the executives) that results in a breach of the contractual relationship between the principal and a third-party.  <u>See</u> Restatement (Second) of Agency §282 ("principal is affected by the knowledge of an agent who acts adversely to the principal: (a) if the failure of the agent to act upon or to reveal information results in a violation of a contractual or relational duty of the principal to a person harmed thereby"); <u>see also</u>, <u>id.</u> §162, cmt. d (the "fact that the agent makes a misstatement for purposes of his own or for purposes antagonistic to those of his principal does not prevent the principal from being subject to liability" in actions "brought upon a contract or to rescind a contract"); Restatement (Second) of Contracts § 2-205, cmt. d (1981) ("[s]ubterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified"); <u>U.S. v. 141st St. Corp.</u>, 911 F.2d 870 (2d Cir. 1990), <u>cert denied</u>, 498 U.S. 1109 (1991); <u>In re Payroll Express Corp.</u>, 186 F.3d 196 (2d Cir. 1999).

In addition, Plaintiffs note that a principal may not disavow an act of an agent while simultaneously taking advantage of the benefits of the fraudulently procured bargain.  See Restatement (Second) of Agency § 282 cmt. h (1958) (a principal may not disclaim knowledge of the agent's fraud and yet attempt to retain a benefit obtained by the fraud; this is a restitution principle preventing the unjust enrichment of the principal).  Under New York law, it is clear that a principal may not use the "adverse agent" exception both as a shield to liability and a sword to force a third party defrauded by its agent to abide by the terms of a contract.  Munroe v. Harriman, 85 F.2d 493, 495 (2d Cir. 1936) (noting that a principal who retains a benefit fraudulently obtained bears the burden of the agent's knowledge).

Finally, Plaintiffs note that the redemption provisions of the Indenture provide for redemption only if Cendant's common stock price had exceeded $38.86 per share for twenty days within a period of thirty consecutive trading days before the notice of redemption.  There is no reasonable dispute, indeed Cendant does not explicitly argue to the contrary, that but for the accounting irregularities, Cendant's stock price would not have exceeded the required trigger price.  Plaintiffs say that the required trigger price was a necessary condition before Cendant's redemption of its notes under the Indenture. As such, Plaintiffs argue that the wrongful inducement of such a condition resulted in Plaintiffs not receiving the contractual benefits under the Indenture.  See e.g. 6 Corbin on Contracts § 1265.  Plaintiffs argue that such conduct is grounds for recision.

However, plaintiffs' arguments, while persuasive, are simply not applicable in the context of their claims for breach of good faith and fair dealing.  Plaintiffs do not address the basic

-13-

premise of their claim for a breach of good faith, that is, that Cendant engaged in bad faith.  <u>See</u> 23 Williston on Contracts § 63:22 (4th Ed. 2002) ("It is axiomatic that before a court will consider a claim that the implied duty of good faith has been violated, there must be some factual basis for, and in some jurisdictions, an allegation of, bad faith on the part of the defendant.").  More importantly, a determination that alleged conduct was in bad faith and in violation of the implied duty of good faith is quintessentially dependant on the facts of the case and should be determined by a jury or other fact finder.  <u>Id.</u>; <u>see also</u> <u>Home & City Sav. Bank v. Rose Assocs. I, L.P.</u>, 572 N.Y.S.2d 458, 461 (App. Div. 1991).  If a defendant presents facts, which if true, would allow a jury to conclude that defendant did not act in bad faith or plaintiff fails to allege facts that demonstrate bad faith, summary judgment is inappropriate.  <u>See generally</u> <u>deCiutiis v. NYNEX Corp.</u>, 1996 WL 512150, at *3-4 (S.D.N.Y. Sept. 9, 1996); <u>Bank of China v. Chan</u>, 837 F.2d 780, 789 (2d Cir. 1991); <u>MTI Systems Corp. v. Hatziemanuel</u>, 542 N.Y.S.2d 710 (2d Dept. 1989).

As the Court noted earlier in denying Kennilworth's summary judgment motion on its 10b-5 fraud claims, Plaintiffs have failed to allege facts that establish that there is no material dispute as to Cendant's culpable conduct.  The failure to establish culpable intent is equally applicable here because the law of New York requires a demonstration of bad faith by Cendant in order to establish liability for breach of an implied covenant of good faith and fair dealing.  The record in this case is too bare for the parties to establish that no issue of material facts exists as to

-14-

Cendant's alleged bad faith.[3]  Plaintiffs' motions for summary judgment on their breach of contract claims are now denied.

**C.    Cendant's Cross-Claim for Summary Judgment on Breach of Contract**

Cendant has cross-moved  for summary judgement arguing that Plaintiffs lack standing to bring a breach of contract claim based on the "no-action" clause in the Indenture.  Cendant claims that Plaintiffs failed to comply with the "no-action" clause requirement that they notice the Trustee of the breach and failing to do so forecloses plaintiffs' breach of contract claim. Feder v. Union Carbide Corp., 530 N.Y.S.2d 165, 166 (App. Div. 1988).  Cendant argues that Plaintiffs claims do not come within the "no-action" clause exception for payment of interest and principal on the bonds because they claim the Indenture exception is limited to unpaid or past due principal and/or interest.  See Bank of New York v. Battery Park City Auth., 675 N.Y.S.2d 860 (App. Div. 1998) (dismissing breach of contract claim because the language of the Indenture was limited to unpaid or past due principal or interest); But Cf. Continental Casualty Co. v. State of New York Mortgage Agency, 1998 WL 513054 (S.D.N.Y. Aug. 18, 1998) (allowing a breach of contract claim where Indenture did not contain language restricting suits for unpaid or past due interest or principal).  Cendant also argues that Plaintiffs' defense that they were not "holders" of

---

[3]  Plaintiffs in their reply papers implicitly do not dispute that the factual record is insufficient to support a motion for summary judgement absent facts that demonstrate bad faith on the part of Cendant.  Indeed, Plaintiffs, in seeking permission to file their respective motions for summary judgement, provided the Court with arguments regarding the alleged knowledge of certain individual Cendant employees of the fraud, knowledge which would be a necessary step in establishing bad faith on the part of Cendant.  Curiously, in their subsequent briefing, Plaintiffs have abondoned these arguments and now argue that their claim for breach of contract does not require a determination of bad faith, a position that this Court does not share.

-15-

Cendant bonds once the bonds were redeemed, is foreclosed by the court's decision in <u>Bank of New York</u>.  There the court noted that an alternative basis for dismissing bond holders' breach of contract claim was the fact that they failed to comply with the no-action clause.  <u>See Bank of New York</u>, 675 N.Y.S.2d at 860; <u>see also</u> <u>Continental Casualty Co.</u>, 1998 WL 513054 at *4.

Plaintiffs respond to Cendant's lack of standing argument in three ways.  First, Plaintiffs argue that the Indenture provision authorizing actions to proceed without seeking consent from the Trustee are not limited to claims arising from allegedly wrongful redemption.  Plaintiffs contend that the Indenture provision is permissive and broad, and encompasses the types of claims considered by the court in <u>Continental Casualty Co.</u>, including all claims for principal and interest, not just unpaid principal and interest.  Second, Plaintiffs argue that the "no-action" clause is inapplicable to former holders and that they should be viewed as former holders at the point the bonds were redeemed.  For support that a "no action" clause would not apply in such cases, Plaintiffs refer to the Supreme Court of Delaware's decision in <u>Rossdeutscher v. Viacom</u>, 768 A.2d 8 (Del. 2001) which is direct conflict with <u>Bank of New York</u> and <u>Continental Casualty Co.</u>.  Relatedly, Plaintiffs argue that the policy of "no-action" clauses, namely preventing individual bond holders from gaining a priority over other bond holders by quickly filing suit, does not apply in circumstances where no bond holders exist because of redemption.  Third, Plaintiffs argue that the "no-action" clause was inoperative because any demand to the Trustee to sue would have been futile.  <u>See In re New York City Housing Development Corp.</u>, 1987 WL 494921, at *9 (S.D.N.Y.).

The parties do not dispute that "no-action" clauses in bond indentures are not only valid and binding, but are a standard feature of indenture agreements which require compliance by bondholders to prevent dismissal of their suit. Rossdeutscher v. Viacom, 768 A.2d 8, 22 (Del. 2001); see Feder v. Union Carbide Corp., 530 N.Y.S.2d 165, 166 (App. Div. 1988). Cendant contends generally that, as a matter of law, Plaintiffs' failure to abide by the requirements of the "no-action" clause forecloses their breach of contract claims. Plaintiffs do not contest their failure to comply with the Indenture "no-action" clause, instead they argue that they (i) are not "Holders" under the Indenture, (ii) are exempt from the "no-action" clause requirements because they are seeking payment of interest and principal, and (iii) because any demand on the Trustee would have been futile.

Courts are divided on the question of whether bondholders whose bonds have been redeemed fall within the "no-action" clause of indenture agreements. The Appellate Division, First Department, of the New York Supreme Court has determined that the requirements of the no-action clause do apply to bondholders even after the entire class of bonds are redeemed . Bank of New York v. Battery Park City Auth., 675 N.Y.S.2d 860 (App. Div. 1998). Both parties vehemently dispute the necessary weight this Court should assign the Bank of New York decision. Plaintiffs argue that the decision should be treated as dicta while Cendant contends that the court's decision is binding. The Court agrees with the position urged by Cendant. The Court is aware of the Delaware Supreme Court's decision in Rossdeutscher v. Viacom, 768 A.2d 8 (Del. 2001), which found, under New York law, that redeemed bondholders do not fall within purview of the "no action" clause. However, it is apparent that Plaintiffs here are attempting to

assert an interest common to all former bondholders, suggesting that the no-action clause would be equally applicable to post-redemption claims such as those asserted here.  The posture of this case is distinguishable from <u>Rossdeutscher</u>, where the court made clear that "[i]n the case before us, none of the former holders has an interest in approving or not approving this suit . . . ."  Id. at 23.  Although <u>Bank of New York</u> is not binding as a decision of New York's highest court, it remains, for now, the law of New York.

However, a finding that the "no-action" clause is binding on former bondholders after redemption does not end our inquiry.  Here, the Indenture provided the parties with an exception to the "no-action" clause, specifically providing bondholders an absolute right to file an action for principal and interest owed.  The parties do not dispute that plaintiffs seek a return of principal and interest on the bonds had they not been redeemed.  However, Cendant urges the Court to dismiss plaintiffs' breach of contract claim because their claim is for principal and interest in form only, not in substance.  That is to say, Cendant argues that the Indenture exception found at Section 508 applies only to claims for unpaid interest and principal.  There is clear support for this position in cases when the Indenture clearly limits a bondholders right to sue under claims for <u>unpaid</u> interest and principal.  <u>See, e.g.</u>, <u>Cruden v. Bank of New York,</u> 957 F.2d 961 (2d Cir. 1992) ("Notwithstanding the 'no action' clause, the debenture holders have an absolute right to institute suit *after* nonpayment of principal or interest.") (emphasis added); <u>UPIC & Co. v. Kinder-Care Learning Centers</u>, 793 F.Supp. 448, 454-55 (S.D.N.Y.1992) (finding no action clause does not affect plaintiff's right "to receive payment of principal of ... the Security, *on or after* the due date[ ] expressed in the Security") (emphasis added); <u>Bank of New</u>

York, 675 N.Y.S.2d 860 (dismissing breach of contract claim because the language of the Indenture was limited to unpaid or past due principal or interest).

However, New York case law is clear that absent an explicit provision limiting the "no-action" clause exception to suits for unpaid principal and interest, the Indenture is to be interpreted to give effect to the clear language of the document to determine whether plaintiffs' suits are barred.  See Continental Casualty Co. v. State of New York Mortgage Agency, 1998 WL 513054 (S.D.N.Y. Aug. 18, 1998).  To repeat, the Indenture provides the unconditional right of Holders to receive principal and interest and to institute suit for enforcement of that right in the following manner:

> Notwithstanding any other provision in this Indenture, the Holder of any security shall have the right, which is absolute and unconditional, to receive payment . . . of the principal of (and premium, if any, on) and . . . interest on, such Security or payment of such coupon on the respective Stated Maturities expressed in such Security or coupon . . . .

Pearlman Decl. Ex. C § 508 (emphasis added).  The express language of this unconditional right for payment of principal and interest is not limited to unpaid or past due principal and interest as urged by Cendant.  To support its contrary position, Cendant points to the portion of the sentence allowing suit for payment on the Respective Maturities date which is defined to mean the dates on which principal or interest is due.  Cendant argues that this provision demonstrates the clause's limited applicability to unpaid principal and interest.  This might be true if it were the only applicable provision in the Indenture.  However, Cendant fails to note or overlooks the word "or" in the sentence.  The use of the disjunctive "or" in the clause necessarily expands the category of claims for interest and principal and does not limit such claims to unpaid interest.

-19-

This expansive category of claims exempted from the no-action clause include the type of claim made by Plaintiffs.  The exception to the "no-action" clause in Section 508 of the Indenture applies to the Plaintiffs, giving them standing to sue.

Because of the Court's finding of applicability of the Indenture's exception to the "no-clause" action, there is no reason to reach the issue of whether plaintiffs' demand on the Trustee would have been futile.  The Court finds that Plaintiffs have standing to bring their breach of contract suit and denies Cendant's cross-motion for summary judgment.

**CONCLUSION**

Plaintiffs' motions for summary judgment are denied, and defendant Cendant's cross-motion for summary judgment is denied.

s/ Williams H. Walls

**William H. Walls, U.S.D.J.**