**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE: CENDANT CORPORATION SECURITIES LITIGATION | : : : : : : : : : | **OPINION** <br><br> Civil Action No. 98-1664 (WHW) |

**Walls, Senior District Judge**

Presently before the Court is whether Defendants Cendant Corporation and certain other Defendants ("Cendant"),[1] under the Stipulation of Settlement ("Stipulation") with Lead Plaintiffs California Public Employees' Retirement System, New York State Common Retirement Fund, and New York City Pension Funds ("Lead Plaintiffs"),[2] may petition the Court for reimbursement of certain fees and expenses arising out of its litigation with Ernst & Young LLP

---

[1] Other Defendants include Henry R. Silverman, John D. Snodgrass, Michael P. Monaco, James E. Buckman, Scott E. Forbes, Steven P. Holmes, Robert D. Kunisch, Leonard S. Coleman, Christel DeHaan, Martin L. Edelman, Brian Mulroney, Robert E. Nederlander, Robert W. Pittman, E. John Rosenwald, Jr., Leonard Schutzman, and Robert F. Smith. (Pl.'s Initial Br. Ex. A ¶ 1(ee).)

[2] Lead plaintiffs were appointed on September 8, 1998 to act on behalf of the Class. (Pl.'s Initial Br. Ex. A ¶¶ C.) The Class consists of all "persons who purchased or otherwise acquired the publicly traded securities of Cendant Corporation or CUC International, Inc., except PRIDES, during the period between May 31, 1995 and August 28, 1998, inclusive, and who were damaged thereby." (Pl.'s Initial Br. Ex. A ¶¶ 1(c).) CUC International, Inc. was Cendant's predecessor before it merged with HFS Incorporated to form Cendant Corporation.

-1-

**FOR PUBLICATION**

("E&Y")[3] when any net recovery from that litigation is to be shared between Lead Plaintiffs and Cendant. This Court reviews <u>de novo</u> a recommendation and report by the Special Discovery Master Alvin Weiss ("SDM Weiss") finding that Cendant may apply for "reimbursement of its attorneys' fees and expenses" and that nothing in the Stipulation prohibits the Court from awarding some, none, or all of Cendant's legal fees. (SDM Weiss Decision 4.) SDM Weiss's recommendation is adopted.

## FACTS AND PROCEDURAL BACKGROUND

On August 15, 2000, this Court approved the Stipulation between Lead Plaintiffs and Cendant. In consideration for Lead Plaintiffs' releasing their claims, Cendant agreed to provide two forms of monetary compensation and to make certain changes in corporate governance. The monetary compensation included a cash payment of $2,851,500,000, plus interest, and a share of any net recovery arising out of Cendant's suit against E&Y. After eight years of intensive litigation, E&Y agreed to pay Cendant $298,500,000 in full settlement of all claims by each party against the other. Counsel for Cendant informed counsel for Lead Plaintiffs that Cendant had settled with E&Y, that the proceeds of the settlement would be placed in an interest-bearing account, and that Cendant would seek reimbursement of certain fees and expenses incurred throughout its litigation with E&Y. Lead Plaintiffs dispute Cendant's right to apply for the reimbursement of fees and expenses.

---

[3]Cendant began litigating with E&Y in 1999 on claims arising from the same audits of CUC International, Inc. that were the subject of the Class's claims against Cendant. (Def.'s Reply Br. 3.)

FOR PUBLICATION

## LEGAL STANDARD

Under the Stipulation, New Jersey substantive law applies regardless of New Jersey's choice of law rules. (Pl.'s Initial Br. Ex. A ¶ 41.) Both parties and SDM Weiss agree that an effective statement of the relevant New Jersey law governing the interpretation of a settlement agreement can be found in Impink ex rel. Baldi v. Reynes:

> "[A] settlement between parties to a lawsuit is a contract like any other contract, which may be freely entered into and which a court, absent a demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts." Jennings v. Reed, 381 N.J. Super. 217, 227, 885 A.2d 482 (App. Div. 2005) (internal quotations and citations omitted). . . . In Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc., 249 N.J. Super. 487, 493, 592 A.2d 647 (App. Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991), we stated that "where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960); Levison v. Weintraub, 215 N.J. Super. 273, 276, 521 A.2d 909 (App. Div.1987), certif. denied, 107 N.J. 650, 527 A.2d 470 (1987). The court has no right 'to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently.' Id.; Brick Twp. Mun. Util. Auth. v. Diversified R.B. & T., 171 N.J. Super. 397, 402, 409 A.2d 806 (App. Div. 1979). Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other. James v. Federal Ins. Co., 5 N.J. 21, 24, 73 A.2d 720 (1950)." Ibid.
>
> Furthermore, our Supreme Court has observed that "[i]t is of course not the province of the court to make a new contract or to supply any material stipulations or conditions which contravene the agreements of the parties." Marini v. Ireland, 56 N.J. 130, 143, 265 A.2d 526 (1970).

396 N.J. Super. 553, 559–60, 935 A.2d 808, 812 (App. Div. 2007).

## ANALYSIS

Cendant expended a substantial amount of money to recover from E&Y. That recovery, currently in an interest-bearing account, will be partially shared with the Class. Before the Court

**FOR PUBLICATION**

is whether, under the Stipulation, Cendant may apply to recover certain attorneys' fees and other expenses incurred during its litigation with E&Y.  The Court finds that the Stipulation allows for Cendant to petition for reimbursement of fees and costs.  The amount of fees and costs to be reimbursed, if any, is not at issue at this time.

The Stipulation leaves the door open for Cendant to recover its expenses.  Under the Stipulation, the "Net Settlement Fund" is what is ultimately distributed to the Class Members.  (Pl.'s Initial Br. Ex. A ¶¶ 1(y), 2(g), 22(dd).)  "Net Settlement Fund" is defined in the Stipulation as "the Settlement Fund less any attorneys' fees, expert fees, costs and expenses approved by the Court."  (Id. ¶ 1(v).)  "Settlement Fund" means "the sum of the Settlement Amount plus one-half of any net recovery obtained by Cendant . . . from E&Y."  (Id. ¶ 1(dd).)  The "Settlement Amount" is "Two Billion, Eight Hundred Fifty One Million, Five Hundred Thousand Dollars ($2,851,500,000) in cash."  (Id. ¶ 1(c).)  Substituting in the relevant portions of the latter definitions, "Net Settlement Fund" is defined as the sum of $2,851,500,000 in cash, plus one-half of any net recovery obtained by Cendant from E&Y, less any attorneys' fees, expert fees, costs and expenses approved by the Court.  The Stipulation's clear and unambiguous term, "less any attorneys' fees, expert fees, costs and expenses approved by the Court" (emphasis added), allows Cendant to seek reimbursement from the Settlement Fund of the fees it incurred during its litigation with E&Y.

Lead Plaintiffs correctly admonish that "any" can have different meanings depending on the setting, but they never offer a constrictive reading of "any" that works in this context.  (Pl.'s Reply Br. 6.)  Among the cases they cite, only Nixon v. Missouri Municipal League employs a

FOR PUBLICATION

narrow reading of the word "any." 541 U.S. 125, 132–33 (2004). There, the Court found that taking a broad definition of "any" would lead to "strange and indeterminate results." Id. Reasoning that Congress could not have intended such results, the Court found that "any" did not mean "all" or "every" under the circumstances. Id. Here, however, the natural reading of "any" as "all" or "every" does not lead to "strange or indeterminate" results, is consistent with the entire Stipulation, and accords with the likely intentions of the parties (see *infra* pp. 5–8). "Any" is often synonymous with "either," "every," or "all." Black's Law Dictionary 94 (6th ed. 1990); see also United States v. Rosenwasser, 323 U.S. 360, 363 (1945) ("The use of the words 'each' and 'any' to modify 'employee,' which in turn is defined to include 'any' employed individual, leaves no doubt as to the Congressional intention to include all employees within the scope of the [Fair Labor Standards] Act unless specifically excluded.") (emphasis added); In re Ordinance 04-75, 192 N.J. 446, 461, 931 A.2d. 595, 603 (2007) ("Here, based on its statutory context, the word 'any' clearly is synonymous with the word 'all.'"); Am. Wrecking Corp. v. Burlington Ins. Co., 400 N.J. Super. 276, 283–84, 946 A.2d 1084, 1088–89 (App. Div. 2008) (finding the "ordinary" meaning of "any" to be broad and inclusive). Nothing in the Stipulation belies that natural reading.

In New Jersey, a court's ultimate goal in a contract dispute is to discover the intent of the parties. Conway v. 287 Corporate Ctr. Assocs., 187 N.J. 259, 270, 901 A.2d 341, 347 (2006). Extrinsic evidence, as well as textual evidence, can be utilized in that pursuit. Id. Here, the intent of the parties is implied by the absence of any limitation placed on the phrase "any attorneys' fees . . . approved by the Court." The parties could have defined "Net Settlement

**FOR PUBLICATION**

Fund" such that it limited attorneys' fees to "Lead Counsel's"[4] or to those "expressly provided below." See In re Ordinance 04-75, 192 N.J. at 460 (using as evidence of intent the absence of a qualifying term when its inclusion would have been easy and logical). Indeed, the phrase "as expressly provided below" was used as a limitation in an otherwise identical definition of "Net Settlement Fund" found in a structurally similar stipulation—written by the same Lead Counsel representing the same Class of investors—settling the Class's direct claims against E&Y. (Def.'s Reply Br. Ex. G ¶1(w) ("'Net Settlement Fund' means the Settlement Fund less any attorneys' fees, expert fees, costs and expenses approved by the Court as expressly provided below.") (emphasis added).) That stipulation was dated the same day as the Stipulation at issue here. Therefore, if the parties intended to limit what fees could be deducted from the Settlement Fund, they had a ready-made alternative clause.[5]

The economic realities surrounding the Stipulation can also provide some insight into the

---

[4]Lead Counsel, defined in the Stipulation as attorneys for the Class, include the law firms of Barrack, Rodos & Bacine and Bernstein Litowitz Berger & Grossmann LLP. (Pl.'s Initial Br. Ex. A ¶ 1(s).) Lead Counsel's fees were dealt with explicitly in the Stipulation. (Pl.'s Initial Br. Ex. A. ¶ 22.)

[5]While there is an integration clause in the Stipulation, (Pl.'s Initial Br. Ex. A ¶ 34), this evidence is not being used to re-write the terms of the contract but merely to interpret the text of the Stipulation as it appears, see Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301–302, 96 A.2d 652, 656 (1953) ("Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity. The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance.").

**FOR PUBLICATION**

likely intentions of the parties. The Class undoubtedly wanted Cendant to zealously litigate its claims against E&Y. Not only was Plaintiff entitled to a share of the net recovery of any award, but as stakeholders in Cendant (among hundreds of other companies that employ major accounting firms) presumably they would want to avoid accounting problems in the future. It was in this vein that part of the Stipulation required corporate governance changes at Cendant. Therefore, even though Cendant had a good-faith obligation to litigate its claims against E&Y,[6] the Class would have wanted to provide an economic incentive for Cendant to litigate zealously. Otherwise, Cendant might have settled its claims quickly to avoid paying full attorney's fees only to recover half the award. If attorney's fees were recoverable, then Cendant would have the incentive to maximize recovery. If Cendant were to bear all the costs of its litigation with E&Y, then their incentive to litigate zealously might be less.[7] Cendant spent eight years litigating against E&Y, filed or opposed 150 motions before the standing master, deposed 220 different

---

[6]As stated by the Third Circuit, "implicit in the settlement is a promise to make a good faith effort to seek recovery against E&Y." In re Cendant Corp. Litig., 264 F.3d 286, 300 (3d Cir. 2001).

[7]Purely by way of example, this can be seen mathematically. In this case, Cendant and E&Y settled for roughly $300 million and Cendant incurred an estimated $65 million in costs. (That cost estimate is not substantiated by any documentation and is used solely for the purposes of this example. The Court in no way accepts or rejects the validity, accuracy, or reasonableness of that estimate.) If Cendant is reimbursed for half of its costs, both parties net $117.5 million. If Cendant is not reimbursed any fees, Cendant nets $85 million, while Lead Plaintiffs net $150 million. If Cendant knew it would not be able to recover fees, however, it could have attempted to keep costs down. Suppose they settled quickly for $200 million at a cost of $15 million. Cendant would still net $85 million, but the Class only nets $100 million (down from $150 million). If Cendant knew fees were recoverable, however, then there was no incentive to settle prematurely as it would only net $92.5 million from the smaller settlement (down from $117.5 million).

**FOR PUBLICATION**

witnesses over nearly 500 days, dealt with three separate appeals to the Third Circuit, and obtained a $298.5 million dollar settlement.  This enormous effort benefits the Class as well as Cendant and is consistent with the incentives provided by allowing Cendant to recover attorney's fees.

The clear and unambiguous text of the Stipulation allows for "any attorneys' fees . . . approved by the Court" to be deducted from the Settlement Fund in order to calculate the Net Settlement Fund, which is ultimately distributed to the Class.  There is no limitation on what attorneys' fees may be deducted and the natural reading of "any" in this case is consistent with the rest of the Stipulation (see *infra* pp. 8–10) and in accord with the likely intention of the parties.

Lead Plaintiffs, however, argue that paragraph 9 of the Stipulation precludes Cendant from requesting attorneys' fees.  (Pl.'s Initial Br. 6.)  Paragraph 9 falls under the heading of "Monetary Consideration."  It states:

> 9. Each of Cendant and the HFS Individual Defendants shall also pay into the Escrow Account [account into which the Settlement Fund is deposited] fifty percent (50%) of the net proceeds that he, she or it may recover from E&Y, as a result of resolving, whether by settlement or judgment, claims they have against E&Y arising out of or relating to the matters that are the subject of the Litigation . . . . Net proceeds, <u>for purposes of this provision</u>, shall mean any sums recovered by Cendant or the HFS Individual Defendants reduced by any amounts paid, or required to be paid, by Cendant or the HFS Individual Defendants in resolution, whether by settlement or judgment, as a result of any claims asserted against them by E&Y, including but not limited to claims or cross-claims asserted in the Litigation, or in connection with litigation brought by or on behalf of purchasers or acquirers of the PRIDES.

(Pl.'s Initial Br. Ex. A ¶ 9 (emphasis added).)

New Jersey law requires that a contract be construed in its entirety and Lead Plaintiffs

FOR PUBLICATION

argue that because the definition of "net proceeds" found in this clause does not mention Cendant's E&Y-related expenses, they are not recoverable under paragraph 1(v). (Pl.'s Initial Br. 6.) This is a flawed conclusion. The phrase "net proceeds" is defined only "for purposes of this provision [paragraph 9]" and is not included among the definitions of important terms found at the beginning of the Stipulation.

Furthermore, paragraph 9 relates to the payment of the "net proceeds" to the "Escrow Account," which is where the Settlement Fund is deposited. (Pl.'s Initial Br. Ex A ¶¶ 1(m), 9.) The Settlement Fund, however, is not distributed to the Class—the Class Members recover the Net Settlement Fund. (Pl.'s Initial Br. Ex. A ¶¶ 1(y), 2(g), 22(d).) Since paragraph 1(v) allows "attorneys' fees . . . approved by the Court" to be taken out of the Settlement Fund to calculate the Net Settlement Fund, it would have been redundant to explicitly include or preclude attorneys' fees in the calculation of the Settlement Fund, which is all that paragraph 9 speaks to.

Lead Plaintiffs also argue that paragraph 22 of the Stipulation precludes Cendant from applying for fees. Paragraph 22 falls under the heading "Administration and Distribution of the Settlement Fund" and provides for certain deductions from the Settlement Fund. Subparagraph (a) provides for money from the Settlement Fund to be used for the costs resulting from notifying, locating, paying, etc., the Class Members. Subparagraph (b) provides for payment of attorneys' fees to Lead Counsel[8] (and other counsel who assisted in the litigation, at the discretion of Lead Counsel). Subparagraph (c) provides for payment of taxes and tax expenses

---

[8] Lead Counsel represent Lead Plaintiffs so paragraph 22 of the Stipulation does not explicitly refer to Cendant's attorneys' fees arising out of any action.

**FOR PUBLICATION**

owed by the Settlement Fund and subparagraph (d) provides that "subject to the approval and further order(s) of the Court . . . [the] balance of the Settlement Fund (the 'Net Settlement Fund')" would be distributed to the authorized claimants (as defined in the Stipulation).

According to Lead Plaintiffs, the preceding deductions "and these alone" may be deducted from the Settlement Fund. Such a limitation, however, cannot be found in the text. Just as the parties could have very easily limited "any attorneys' fees . . . approved by the court," they could have also made clear that paragraph 22 provided an exhaustive or exclusive list of deductions. As Lead Plaintiffs repeatedly pointed out, unstated intentions are not binding on the parties, and nothing discernable in paragraph 22, read in the context of all of the Stipulation's provisions, limits Cendant's right to petition the Court for attorneys' fees. See generally Hagrish v. Olson, 254 N.J. Super. 133, 138, 603 A.2d 108, 110 (App. Div. 1992) ("A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested."). Not only does nothing in the text limit the possible deductions, but the language of subparagraph 22(d), quoted above, explicitly leaves the door open for further deductions from the Settlement Fund. Such an opening is consistent with the language of paragraph 1, and logical in light of the fact that when the Stipulation was signed it was uncertain whether Cendant would recover from E&Y.

Lead Plaintiffs maintain that the open-door language in paragraph 22(d) "refers only to the process of distributing the 'balance' (Net Settlement Fund) allowed by Paragraphs 22(a)-(c) to Class Claimants," (Pl.'s Reply Br. 8–9), but there is nothing in the Stipulation justifying such a conclusion. Subsection (d) does not reference the other subsections and the language "further

**FOR PUBLICATION**

order(s)," with uncertain plurality and use of the adjective "further," is expansive rather than constrictive. Further is defined as "additional" and "is equivalent to '. . . something beyond what has been said.'" Black's Law Dictionary 675 (6th ed. 1990). If "further" does not refer to unstated deductions then the entire first clause of paragraph 22(d) would be meaningless. Because the rules of contract interpretation require that all clauses be given effect when possible, paragraph 22(d) must be read to allow for additional deductions from the Settlement Fund other than those specifically mentioned in 22(a)–(c).

If paragraph 22 is not read as limiting paragraph 1, then in the alterative, Lead Plaintiffs argue that there is a repugnancy between paragraph 22 and paragraph 1(v). They highlight the rule that "where there is a repugnancy between the general clauses and specific ones, the latter will govern" and argue that paragraph 22 is specific and paragraph 1(v) is general. (Pl.'s Initial Br. 10, citing Ehnes v. Hrones, 127 N.J.L. 551, 553, 23 A.2d 592, 593 (1942).) While that legal axiom is true, it is also true that if one of the clauses can be read such that it is not repugnant (or left useless or inexplicable), then that is the preferred reading. Restatement (Second) of Contracts § 203(a). Unlike Lead Plaintiffs' reading, the Court's interpretation—that paragraphs 22(a)–(c) are not an exhaustive list of deductions—avoids any repugnancy and allows paragraphs 1(v) and 22 to both have meaning. Furthermore, even if there was a repugnancy, it is unclear that paragraph 22 is more specific: part (d), quoted above, refers to "Net Settlement Fund" as it is defined in paragraph 1(v).

Finally, Lead Plaintiffs argue in their reply brief that the "Cendant Stipulation does not express any intention that Cendant may recover any of its E&Y-related Attorney's fees." (Pl.'s

FOR PUBLICATION

Reply Br. 10 (emphasis added).)  That argument is off-target.  The Court has determined that Cendant has the right to seek reimbursement of its fees.  It follows then that the issue of recovery is subsumed within such right, subject as always, to the evaluative discretion of the Court, which may award some, none, or all of the legal fees requested by Cendant.

## CONCLUSION

Under the Stipulation, Cendant has a right to apply for reimbursement of its E&Y-related fees and expenses.


August 4, 2008                                                                         **s/William H. Walls**
                                                                                       United States Senior District Judge


Appearances

Leonard Barrack
Jeffrey W. Golan
Barrack, Rodos, & Bacine
300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

Max W. Berger
Jeffrey N. Leibell
Berstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, New York

      Attorneys for Lead Plaintiffs and the Class

Carl Greenberg
Donald P. Jacobs

**FOR PUBLICATION**

Budd Larner, P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078

Peter W. Tomlinson
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036

    Attorneys for Cendant Corporation