IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------x
:
In re:                                        :   Master File No.
                                              :   98-1664 (WHW)
CENDANT CORPORATION                           :
LITIGATION                                    :   This document relates to:
                                              :   All Actions Except the Prides Action (No. 98-2819)
---------------------------------------------x

## HEARING ORDER AND
## ORDER MODIFYING THIRD DISTRIBUTION ORDER

WHEREAS:

A.  Lead Plaintiffs, the New York State Common Retirement Fund, the California Public Employees' Retirement System and the New York City Pension Funds (collectively "Lead Plaintiffs") and Heffler Radetich & Saitta, L.L.P. ("Heffler"), by and through their respective counsel, have entered into a proposed settlement of any claims that could be asserted against Heffler in connection with the payment of Fraudulent Claims submitted in the Action (the "Settlement"), the terms of which are set forth in the Stipulation and Agreement of Settlement filed with the Court (the "Stipulation");

B.  Lead Plaintiffs have moved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an Order preliminarily approving the Settlement in accordance with the terms and provisions of the Stipulation and providing notice to Class Members;

C.  The Order Approving Lead Plaintiffs' Motion to Conduct a Third Distribution of the Net Settlement Fund, and for Payment of Lead Counsel's Fees for Services Provided Between October 1, 2003 and January 31, 2009, and for Unreimbursed Litigation Expenses

("Third Distribution Order") only provided for a third and fourth distribution from the Net Settlement Fund after which any balance remaining in the fund would be donated to an appropriate charity; and

D. The Court having read and considered the Stipulation, the proposed Notice of Proposed Settlement of Possible Claims against Claims Administrator, and the proposed Judgment relating to the Settlement, and finding that substantial grounds exist for entering this Order;

IT IS HEREBY ORDERED:

1. For purposes of this Order, the Court adopts all defined terms as set forth in the Stipulation.

2. The Court preliminarily approves the Settlement, as reflected in the Stipulation, as being fair, reasonable and adequate, pending a final hearing on the Settlement.

3. Paragraphs four (4) and five (5) of the Third Distribution Order are modified to provide that the funds that remain in the Net Settlement Fund after the Fourth Distribution due to uncashed checks, funds deposited pursuant to the terms of the Settlement (if approved) and/or restitution funds obtained through the criminal proceedings instituted in relation to the Fraudulent Claims, or for other reasons, shall, no earlier than (i) six months after the Fourth Distribution, (ii) the date on which the Settlement if approved becomes Final, or, if applicable, (iii) the date on which the Settlement is terminated and the parties to the Stipulation are restored to their respective positions as of November 20, 2008, whichever is latest, shall be re-distributed at that time only to those Claimants who by that time have cashed their Fourth Distribution checks and who would receive at least $10 from such distribution after the payment from this balance of the unpaid costs incurred in connection with such re-distribution as are approved by

Lead Plaintiffs. Additional re-distributions to Claimants who have cashed each of their prior distribution checks and who would receive at least $10 from such re-distribution after payment of the costs of the re-distribution as approved by Lead Plaintiffs, shall occur thereafter in six-month intervals until Lead Counsel in consultation with Lead Plaintiffs and Heffler determine that further re-distributions would not be cost-effective, at which time Lead Plaintiffs shall donate the balance in the Net Settlement Fund to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Lead Plaintiffs and approved by the Court.

**NOTICE**

4. Lead Plaintiffs shall cause notice of the proposed Settlement and the hearing thereon to be provided to Class Members as follows:

a. A copy of the Notice of Proposed Settlement of Possible Claims against Claims Administrator (the "Notice"), substantially in the form annexed hereto as Exhibit 1, shall be mailed by first class mail postage prepaid to all Class Members who are receiving a Fourth Distribution check, *i.e.*, those Class Members who, pursuant to prior orders of this Court have a continuing interest in the proceeds of the settlements achieved with the defendants in the Action, together with the check.

b. A copy of the Notice, the Stipulation, and Lead Plaintiffs' motion papers in support of approval of the Settlement shall be made available to Class Members on the websites of both Bernstein Litowitz Berger & Grossmann LLP ("Co-Lead Counsel") and Heffler (on the pages of those websites pertaining to the Action).

5. The Court approves the form of Notice and finds that the procedures established for dissemination of the Notice substantially in the manner and form set forth in paragraph 4 of

this Order meet the requirements of Rule 23(e) of the Federal Rules of Civil Procedure and due process.

6. The costs of notification to Class Members of the Settlement, including printing and mailing of the Notice, shall be paid out of the Cendant Class Settlement Fund.

7. No later than seven (7) calendar days before the date fixed by the Court for the Settlement Hearing, Co-Lead Counsel shall cause to be filed with the Clerk of the Court affidavits or declarations of the person(s) under whose general direction the mailing of the Notice shall have been made, showing that such mailing has been made in accordance with this Order.

**HEARING; RIGHT TO BE HEARD**

8. There shall be a hearing on _23 April_, 2013 at _9:30_ .m. (the "Settlement Hearing") at which time the Court shall address the fairness, reasonableness and adequacy of the Settlement. The Settlement Hearing shall be held at the United States District Court for the District of New Jersey, Martin Luther King, Jr. Federal Building & U.S. Courthouse, Courtroom 4D, 50 Walnut Street, Newark, NJ 07102.

9. Any Class Member may appear at the Settlement Hearing to show cause why the Settlement should or should not be approved as fair, reasonable and adequate or why judgment should or should not be entered thereon; *provided, however*, that no Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, unless that person or entity has filed a written objection with the Court and served copies of such objection in the manner provided in the Notice, such that it is received no later than fourteen (14) calendar days prior to the Settlement Hearing, on each of the following:

| *Co-Lead Counsel for the Class* | *Counsel for Heffler* |
|---|---|
| Max W. Berger, Esq.<br>Bernstein Litowitz Berger &<br>   Grossmann LLP<br>1285 Avenue of the Americas<br>New York, NY 10019 | Patricia M. Hamill, Esq,<br>Conrad O'Brien PC<br>1500 Market Street<br>West Tower, 39th Floor<br>Philadelphia, PA 19102 |

10. Any objections, filings or other submissions by an objecting Class Member must contain the objector's full name, address and telephone number as well as a statement of his, her or its objection, and the specific reasons, if any, for each objection, including the legal and evidentiary support the Class Member wishes to bring to the Court's attention. In addition, if any person or entity, other than a Class Member to whom the Notice was mailed pursuant to ¶ 4(a) above, submits an objection, he, she or it must include documents sufficient to establish membership in the Class.

11. Any Class Member who does not object in the manner prescribed above shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement.

12. In the event that any Class Member serves and files a written objection, as set forth above, Lead Plaintiffs may, as they deem appropriate, submit reply papers in support of the Settlement no later than seven (7) calendar days before the Settlement Hearing.

13. If the Settlement is approved, all Class Members will be bound by the Settlement and by any judgment or determination of the Court affecting Class Members, regardless of whether or not a Class Member submits an objection or submitted a Proof of Claim in the Action.

14. The Court expressly reserves the right to adjourn or continue the Settlement Hearing or any adjournment or continuance thereof without any further notice other than an

announcement at the Settlement Hearing or any adjournment or continuance thereof, and to approve the Stipulation with modification and without further notice to Class Members.

15. The Court shall retain continuing jurisdiction over the Settlement and the Action.

IT IS SO ORDERED:

DATED: 28 December 2012

_____
WILLIAM H. WALLS, U.S.D.J.

# 522099

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Master File No. 98-CV-1664 (WHW) |
| CENDANT CORPORATION SECURITIES LITIGATION | This document relates to: all actions except the Prides Action (No. 98-2819) |

**NOTICE OF PROPOSED SETTLEMENT OF
POSSIBLE CLAIMS AGAINST CLAIMS ADMINISTRATOR**

THIS NOTICE IS BEING SENT PURSUANT TO AN ORDER OF THE COURT TO ADVISE CLASS MEMBERS IN THE SETTLED CENDANT CORPORATION SECURITIES LITIGATION OF A PROPOSED SETTLEMENT WITH THE CLAIMS ADMINISTRATOR FOR THE ACTION.[1]

    As you were previously advised, Lead Plaintiffs, the California Public Employees' Retirement System, the New York State Common Retirement Fund and the New York City Pension Funds (collectively, "Lead Plaintiffs"), achieved an initial cash recovery in this Action of $3,186,500,000 for the benefit of the Class, which, at the time, was the largest recovery in a securities class action. Additionally, as part of the settlement consideration, Lead Plaintiffs also obtained the right to a fifty percent interest in any net recovery Cendant or the HFS Individual Defendants obtained from Ernst & Young LLP ("E&Y") in resolution of the claims they had or were litigating against E&Y. Accordingly, the initial recovery was subsequently augmented by $131,750,000 obtained from the resolution of those claims. You previously received three distributions from the Cendant Class Settlement Fund and the fourth distribution is enclosed with this notice.[2]

    You are receiving this notice because, as a Cendant Class Member who or which cashed each of the first three distribution checks, you are, pursuant to prior orders of the Court, a person or entity with a continuing interest in the Settlement Fund. This notice is to advise you that Lead Plaintiffs have entered into a Stipulation and Agreement of Settlement (the "Stipulation")[3] to settle possible claims against the Claims Administrator for the Action, Heffler, Radetich & Saitta L.L.P. ("Heffler"), which, if approved, will add a minimum of $1,100,000 to the Settlement Fund that will be distributed to Class Members who or which have cashed each of their prior distribution checks.

    The possible claims against Heffler relate to the fact that payment was made from the Cendant Class Settlement Fund on six claims that, pursuant to a criminal investigation conducted by the Internal Revenue Service Criminal Investigation Division and the Federal Bureau of Investigation, were

---

[1] The Class consists of all persons and entities who purchased or otherwise acquired the publicly traded securities of Cendant Corporation or CUC International, Inc., except PRIDES, during the period between May 31, 1995 and August 28, 1998, inclusive, and who were damaged thereby other than certain persons and entities excluded by definition and those persons who elected to exclude themselves from the Class and were excluded by prior Court orders.

[2] Pursuant to a prior Order of the Court, Class Members who or which cashed the Third Distribution checks and whose *pro rata* share of the Fourth Distribution is at least $10 are receiving checks.

[3] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Stipulation.

determined to be fraudulent. In late 2008, an indictment by the United States Attorneys' Office, which had earlier been filed under seal, was unsealed. It was then that Lead Plaintiffs learned that ten fraudulent claims had been submitted in the Action and that payments were made with respect to six of those ten claims. Bernstein Litowitz Berger & Grossmann LLP ("Co-Lead Counsel") and Lead Plaintiffs investigated whether there was a basis for asserting a claim against the Claims Administrator based on the payment of those claims. After an extensive investigation (discussed below), Lead Plaintiffs determined that it was in the interest of the Class to explore the possibility of a settlement with Heffler. An agreement was reached, which is now before the Court for approval. The proposed Settlement provides for:

- Payment of $1.1 million in cash by Heffler into the Cendant Class Settlement Fund; and
- The potential payment of up to an additional $250,000 by Heffler should it settle claims relating to payments in another securities class action on fraudulent claims that were submitted as part of the same scheme to which the Cendant action fell prey.

Additionally, as described in more detail below, payment of funds recovered by the government as restitution in the criminal proceedings related to the fraudulent scheme is being apportioned between this Action and one of the two other actions impacted by the scheme, in proportion to the classes' respective losses in those actions related to the fraudulent scheme. Restitution funds recovered to date have been included in the Fourth Distribution.

The Court has scheduled a Settlement Hearing to consider the fairness of the proposed Settlement on _____, 201_ at ____ .m at the Martin Luther King, Jr. Federal Building and U.S. Courthouse, 50 Walnut Street, Courtroom 4D, Newark, NJ 07102.

You do not need to attend the Settlement Hearing or take any other action. If the Settlement is approved, the Settlement Amount (*i.e.*, $1.1 million) will be added to the Cendant Class Settlement Fund and will be included as part of subsequent distributions as will any additional restitution funds recovered. As discussed below in paragraphs 12 - 13, if you wish to object to the Settlement, you must submit an objection in accordance with the instructions set forth below, so that it is *received* no later than _____, 201_.

**BACKGROUND OF AND REASONS FOR THE PROPOSED SETTLEMENT**

1. By Notice of Settlement of Class Action dated April 7, 2000 (the "Initial Notice"), Class Members were advised that Lead Plaintiffs recovered $3,186,500,000 on behalf of the Class, which, as set forth in the explanatory letter accompanying the Third Distribution, was increased by a subsequent additional recovery achieved in the amount of $131,750,000. In response to the Initial Notice, more than 123,000 claims were submitted to Heffler and, to date, four distributions have been made from the settlement funds to Class Members who submitted valid approved Proof of Claim forms and who cashed all of their distribution checks.

2. In November 2008, an Indictment and an Information that had been filed under seal by the U.S. Attorney for the Eastern District of Pennsylvania on September 11, 2008 were unsealed (collectively, the "Indictment"). The Indictment charged six individuals – one of whom had been a Heffler employee (the "Heffler Former Employee") – with participating in a scheme to submit fraudulent claims in three large securities class action settlements, one of which was Cendant. The charges were based on a criminal investigation conducted by the Internal Revenue Service Criminal Investigation Division and the Federal Bureau of Investigation. The investigation determined that ten

fraudulent claims had been filed in this Action and that payments totaling $28,691,193.84 were made with respect to six of those ten claims (the "Fraudulent Claims").

3.  The Indictment alleged, among other things, that the fraudulent scheme was sophisticated and designed to defraud not only each of the three class action settlements but, also, the firms administering those settlements. The Indictment noted that the perpetrators took elaborate steps to pursue the fraudulent claims and to produce the necessary records to support them. For example, they created fake corporations, using false names for executive personnel, with addresses in the United States and in foreign countries; opened bank accounts and established virtual offices for the fake corporations in the United States and in foreign countries, with functioning mailing addresses and telephone numbers; used professional office services to retrieve the mail and take telephone messages; and created brokerage account statements and other financial documents to make it appear that the fake companies owned the securities necessary to share in the class action settlement funds.

4.  Lead Plaintiffs did not learn of the Indictment or the payments on the Fraudulent Claims until after the Indictment was unsealed. Thereafter, Lead Plaintiffs investigated the circumstances of the fraud to determine whether there was a basis for bringing an action against Heffler or any other persons to recover on behalf of the Class the payments made on the Fraudulent Claims. In connection with this investigation, Co-Lead Counsel and/or Lead Plaintiffs, among other things: (i) reviewed the Indictment; (ii) spoke with the Assistant U.S. Attorney handling the criminal prosecution; (iii) obtained and reviewed all the documents relating to Cendant that were provided by Heffler to the U.S. Attorney's office in connection with the government's investigation into the fraudulent scheme, and reviewed additional documents requested directly from Heffler; (iv) reviewed both the transcript of the hearing in which the Heffler Former Employee pled guilty and the Government's Change of Plea Memorandum and Guilty Plea Agreement with that employee; (v) interviewed, in the presence of Heffler's counsel, the Heffler partner in charge of the Cendant settlement administration; (vi) obtained follow-up representations from Heffler through its counsel; and (vii) obtained responses to written questions put to the Heffler Former Employee by his attorney. Additionally, Co-Lead Counsel and Lead Plaintiffs considered the practices of and industry standards (or lack thereof) applicable to claims administrators at the time of the Cendant settlement administration; reviewed Heffler's claims administration procedures as well as those of other claims administrators; assessed Heffler's insurance coverage and financial condition, and evaluated the possibility of a recovery from the perpetrators of the fraud, Heffler or others.

5.  The conclusion of both the investigation by the U.S. Attorney's office and the one undertaken by Lead Plaintiffs was that, contrary to the initial belief that the Heffler Former Employee was an integral part of the scheme, he apparently had had a very limited role (which did not involve the review or approval of claims submitted) in the Cendant claims administration. Moreover, only one of the ten fraudulent claims was submitted while he was working on the Cendant administration and four fraudulent claims were submitted after he left Heffler's employment.

6.  Based on the results of the investigation, Lead Plaintiffs determined there was no basis for alleging that Heffler participated in the fraudulent scheme uncovered by the government and that Heffler could not be held legally responsible for the conduct of the Heffler Former Employee. While Lead Plaintiffs did believe that a claim could be stated for negligence on the part of Heffler for both failing to have in place adequate policies and procedures to detect fraud and not applying those policies and procedures with sufficient rigor to determine that the claims at issue were fraudulent, they recognized the significant obstacles and risks that they would face if they were to commence an action against Heffler. Based on their investigation, the sophisticated nature of the fraud perpetrated, and the

steps taken by the perpetrators to evade detection, Lead Plaintiffs concluded that the litigation risks, costs and delays attendant to pursuing a negligence claim against Heffler based on its approval or payment of the Fraudulent Claims were significant. Moreover, Heffler's insurance carrier disclaimed coverage on any claims that Lead Plaintiffs might assert. Thus, even if Lead Plaintiffs were to prevail in an action against Heffler, recovery on any judgment could be subject to litigation against its insurance carrier. Lead Plaintiffs weighed both the cost and risk to the Class of protracted litigation against Heffler and, possibly, its insurance carrier and the risk of a possible lengthy postponement of final distribution of the Settlement Fund before entering into the Settlement with Heffler. Finally, the U.S. Attorney's office has pursued the assets of the individuals convicted of participating in the fraudulent scheme. After communications with the Assistant U.S. Attorney, Co-Lead Counsel and Lead Plaintiffs concluded that the likelihood of any additional meaningful recovery from the individual perpetrators of the fraud beyond the restitution funds that have been or may be obtained by the government was minimal, and, accordingly, that pursuing legal action against these individuals on behalf of the Class was not warranted.

       7.     In light of these considerations, Lead Plaintiffs authorized Co-Lead Counsel to explore the possibility of settlement. Following extended negotiations, Lead Plaintiffs and Heffler reached an agreement to settle all claims by the Class against Heffler in connection with the payments on the Fraudulent Claims.

**WHAT DOES THE PROPOSED SETTLEMENT PROVIDE?**

       8.     The proposed Settlement provides that, upon the Effective Date, in exchange for the release by the Class of the Released Claims[4] and upon payment to Heffler of its Court-awarded fees and expenses as audited and approved by Lead Plaintiffs, Heffler:

- will make a cash payment into the Cendant Class Settlement Fund of $1.1 million; and
- if it makes a cash contribution of more than $300,000 toward a settlement in the BankAmerica Action (a second class action that was impacted by the same fraudulent scheme), then Heffler shall pay one dollar to the Cendant Class Settlement Fund for every dollar paid to plaintiffs in the BankAmerica Action in excess of $300,000 up to an additional payment of $250,000.

Additionally, Heffler will continue to apportion any available restitution funds to the Cendant and BankAmerica classes in proportion to the classes' respective losses.[5] As of July 31, 2012, restitution

---

[4] "Released Claims" as used in the Stipulation means any and all claims, actions and causes of action in law or equity, suits, obligations, debts, demands, agreements, promises, liabilities, controversies, damages, losses, attorneys' fees, costs or expenses of any kind whatsoever, whether based on common law or on any federal or state statute, rule, regulation, or other law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, suspected or unsuspected, fixed or contingent, and whether or not concealed or hidden, that Lead Plaintiffs or any Class Member have or may have against Heffler that are based upon, are related to, arise from, or are connected with the recommendation by Heffler for approval of the Fraudulent Claims and/or the payment by Heffler from the Cendant Class Settlement Fund of the Fraudulent Claims as well as all claims arising out of Heffler's role in the review, verification, calculation, tabulation or any other aspect of the processing of the claims in this Action, or other involvement in the administration or taxation of the Cendant Class Settlement Fund or the Net Cendant Class Settlement Fund.

[5] The class' loss in the BankAmerica Action caused by the fraudulent scheme was $5,879,073.36. Class counsel in the third action affected by the fraud will not be making any claim to the restitution funds.

funds in the amount of $1,724,072.92 have been deposited in escrow of which $1,430,808.13 was allocated to this Action and included in the Fourth Distribution.

### WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

9.　　The Settlement Hearing will be held on _____, 201_ at _:_ _.m. before the Honorable William H. Walls, at the Martin Luther King, Jr. Federal Building and U.S. Courthouse, 50 Walnut Street, Courtroom 4D, Newark, NJ. At the Settlement Hearing, the Court will consider whether the proposed Settlement is fair, reasonable and adequate and should be approved.

### WHAT DO I NEED TO DO?

10.　　Nothing. Unless you wish to object to the Settlement or attend the Settlement Hearing (discussed below), you do not need to take any action. If the Settlement is approved, the Settlement Amount will be added to the Cendant Class Settlement Fund and will be included as part of future distributions from the fund.

11.　　**Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval of the Settlement.**

### WHAT ARE THE PROCEDURES FOR OBJECTING TO THE SETTLEMENT?

12.　　If you wish to object to the proposed Settlement, your objection must be in writing and it must be filed, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the District of New Jersey at the address set forth below on or before _____, 201_. You must also serve the papers on Co-Lead Counsel for the Class and on counsel for Heffler at the addresses set forth below so that the papers are *received* **on or before** _____, 201_.

| Clerk's Office | Co-Lead Counsel for the Class | Counsel for Heffler |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>　for the District of New Jersey<br>Martin Luther King, Jr. Federal<br>　Building and U.S. Courthouse<br>50 Walnut Street<br>Newark, NJ 07102 | Max W. Berger, Esq.<br>Bernstein Litowitz Berger<br>　& Grossmann LLP<br>1285 Avenue of the Americas<br>New York, NY 10019 | Patricia M. Hamill, Esq.<br>Conrad O'Brien PC<br>1500 Market Street<br>West Tower, 39th Floor<br>Philadelphia, PA 19102 |

13.　　Any objection to the Settlement must contain (a) the objector's full name, address and telephone number; and (b) a statement of the objection and the specific reasons for the objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention. You may not object to the Settlement if you are not a member of the Class. If you are a Class Member but did not receive this Notice by direct mail, in addition to the requirements noted in the preceding sentence, your objection must also include documentation sufficient to demonstrate your membership in the Class.

14.　　Class Members do not need to attend the Settlement Hearing. The Court will consider any objection made in accordance with the provisions of paragraphs 12 and 13 even if the objecting Class Member does not attend the hearing.

15. Any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the Settlement.

**HOW CAN I SPEAK AT THE SETTLEMENT HEARING?**

16. If you wish to be heard at the hearing in opposition to approval of the Settlement, and if you file and serve a timely written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Co-Lead Counsel for the Class and Counsel for Heffler at the addresses set forth above so that it is *received* on or before _____, 201_. Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.

17. You may file an objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above.

18. You do not need to hire an attorney in order to make a written objection to the Settlement or to appear at the Settlement Hearing. If you do decide to hire an attorney, which will be at your own expense, however, he or she must file a notice of appearance with the Court and serve it on Co-Lead Counsel and Counsel for Heffler at the addresses set forth above so that the notice is *received* on or before _____, 201_.

19. The Settlement Hearing may be adjourned by the Court without further written notice to the Class. If you intend to attend the Settlement Hearing, you should confirm the date and time with Co-Lead Counsel.

**HOW CAN I GET MORE INFORMATION ABOUT THE SETTLEMENT?**

20. This Notice contains only a summary of the terms of the proposed Settlement. For more detailed information about the Settlement, you are referred to the Stipulation which is posted on the Cendant Corporation Litigation case page maintained on Heffler's website, http://www.hrsclaimsadministration.com/cases/cen/ and on Co-Lead Counsel's website www.blbglaw.com. Any related orders entered by the Court will also be posted on those sites. All inquiries concerning this Notice or the Settlement should be directed to:

> Rochelle Feder Hansen, Esq.
> Bernstein Litowitz Berger & Grossmann LLP
> 1285 Avenue of the Americas
> New York, NY 1001
> (800) 380-8496
> blbg@blbglaw.com

Dated: _____, 201_  By Order of the United States District Court for the District of New Jersey

6